Susan E. Coleman (SBN 171832)
E-mail:  scoleman@bwslaw.com
BURKE, WILLIAMS & SORENSEN, LLP
444 South Flower Street, Suite 2400
Los Angeles, CA  90071-2953
Tel: 213.236.0600           Fax:  213.236.2700

Attorneys for Defendant
THE GEO GROUP, INC.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE RUBEN HERNANDEZ GOMEZ; SALESH PRASAD; GUILLERMO MEDINA REYES; EDGAR SANCHEZ; ADAN CASTILLO MERINO; IVAN OLIVA SIERRA; FIDEL GARCIA, ISAAC CARDONA HERNANDEZ, and PEDRO JESUS FIGUEROA PADILLA, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> THE GEO GROUP, INC., <br><br> Defendant. | Case No.  1:22-cv-00868-ADA-BAK/EPG <br><br> **DEFENDANT THE GEO GROUP, INC.'S NOTICE OF MOTION AND MOTION TO STAY ALL PROCEEDINGS PENDING THE OUTCOME OF NINTH CIRCUIT APPEALS IN RELATED CASES; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** <br><br> (*Declaration of Susan E. Coleman filed in concurrently* herewith) <br><br> Judge:  Honorable Ana I. de Alba <br> Date:   October 24, 2022 <br> Time:   1:30 p.m. <br> Courtroom: 1, 8th floor - Fresno |

TO PLAINTIFFS, by and through their counsel of record:

PLEASE TAKE NOTICE THAT that on October 24, 2022, at 1:30 p.m., or as soon thereafter as may be heard, in Courtroom 1 of the Fresno courthouse for the Eastern District of California, Defendant THE GEO GROUP, INC. Defendant THE GEO GROUP, INC. will and hereby does move this Court for an order to stay all proceedings in this matter pending the Ninth Circuit's decision on the related appeals in *Nwauzor v. GEO Group, Inc*., Case No. 21-36024; and *Washington v. GEO Group, Inc*., Case No. 21-36025 (collectively the "Washington Appeals").

///

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

SD #4891-6471-7108 v1

1:22-CV-00868-ADA-BAK/EPG
MOTION TO STAY PROCEEDINGS

1  This Motion will be based on this Notice of Motion, the Memorandum of Points and Authorities in support, the Declaration of Susan Coleman and Exhibits thereto, and such evidence and argument as may be presented at the time of hearing on this matter, should the Court determine that oral argument is warranted.

Prior to filing this Motion, the parties met and conferred, were unable to agree, and exhausted meet and confer efforts. *See* Declaration of Susan E. Coleman.

Dated:  September 19 , 2022        BURKE, WILLIAMS & SORENSEN, LLP

By: */s/ Susan E. Coleman*
      Susan E. Coleman

Attorneys for Defendant
THE GEO GROUP, INC.

Dated:  September 19, 2022        THE GEO GROUP, INC.

By: */s/ Wayne Calabrese*
      Wayne Calabrese
      Joseph Negron

Attorneys for Defendant
THE GEO GROUP, INC.

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ............................................................................................................ 1

II. THIS COURT SHOULD STAY PROCEEDINGS ...................................................... 4

    A. Applicable Law ................................................................................................... 4

        (1) There Would Be Limited Prejudice or Hardship to Plaintiffs ..................... 5

        (2) GEO Will Suffer Significant Prejudice and Hardship if a Stay Is Not Entered ............................................................................................... 7

        (3) A Stay Would Promote Judicial Economy Because the Washington Appeal Will Impact Law Governing This Case ......................................... 9

III. CONCLUSION ............................................................................................................. 12

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

SD #4891-6471-7108 v1

- i -

1:22-CV-00868-ADA-BAK/EPG
MOTION TO STAY PROCEEDINGS

# **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Abdullah v. Myers*,
    52 F.3d 324 (6th Cir. 1995) ............................................................................................... 3

*Ali v. Trump*,
    Case No. 17-cv-135, 2017 WL 1057645 (W.D. Wash. Mar. 17, 2017) ........................... 5

*Alvarado Guevara v. I.N.S.*,
    902 F.2d 394 (5th Cir. 1990) ............................................................................................ 3

*Bennett v. Frank*,
    395 F.3d 409 (7th Cir. 2005) ............................................................................................ 3

*Campbell v. Oregon Dep't of State Lands*,
    No. 2:16-CV-01677-SU, 2017 WL 3367094 (D. Or. Aug. 4, 2017) ............................... 6

*Campbell-Ewald Co. v. Gomez*,
    577 U.S. 153 (2016) ....................................................................................................... 11

*Convergence Techs. (USA), LLC v. Microloops Corp.*,
    No. 5:10-CV-02051 EJD, 2012 WL 1232187 (N.D. Cal. Apr. 12, 2012) ....................... 6

*Danneskjold v. Hausrath*,
    82 F.3d 37 (2d Cir. 1996) ................................................................................................. 3

*Energy Monster v. Monster Energy Co.*,
    No. ED-CV-202528-JGB-SPX, 2021 WL 3598862 (C.D. Cal. Apr. 23, 2021) ............ 10

*Fed. Home Loan Mortg. Corp. v. Kama*,
    Case No. 14-cv-137, 2016 WL 922780 (D. Haw. Mar. 9, 2016) ..................................... 5

*Franks v. Okla. State Indus.*,
    7 F.3d 971 (10th Cir. 1993) .............................................................................................. 3

*Gambetta v. Prison Rehab. Indus. & Diversified Enters., Inc.*,
    112 F.3d 1119 (11th Cir. 1997) ........................................................................................ 3

*Gilbreath v. Cutter Biological, Inc.*,
    931 F.2d 1320 (9th Cir. 1991) .......................................................................................... 3

*Guevara v. I.N.S.*,
    954 F.2d 733 (Fed. Cir. 1992) (unpublished) .................................................................. 3

*Hancock v. Train*,
    426 U.S. 167 (1976) ....................................................................................................... 11

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

SD #4891-6471-7108 v1         - ii -         1:22-CV-00868-ADA-BAK/EPG
                                              MOTION TO STAY PROCEEDINGS

*Henthorn v. Dep't of Navy*,
    29 F.3d 682 (D.C. Cir. 1994) ............................................................................................... 3

*Landis v. N. Am. Co.*,
    299 U.S. 248 (1936) ............................................................................................... 4, 5, 10

*Leyva v. Certified Grocers of Cal., Ltd.*,
    593 F.2d 857 (9th Cir. 1979) ............................................................................................. 4

*Lockyer v. Mirant Corp.*,
    398 F.3d 1098 (9th Cir. 2005) ....................................................................................... 4, 5

*Loving v. Johnson*,
    455 F.3d 562 (5th Cir. 2006) ............................................................................................. 3

*McMaster v. Minnesota*,
    30 F.3d 976 (8th Cir. 1994) ............................................................................................... 3

*Miller v. Dukakis*,
    961 F.2d 7 (1st Cir. 1992) ................................................................................................. 3

*Ndambi v. CoreCivic, Inc.*,
    990 F.3d 369 (4th Cir. 2021) ......................................................................................... 2, 3

*Nken v. Holder*,
    556 U.S 418 (2009) ........................................................................................................... 5

*Novoa v. GEO*,
    Case No. 5:17-cv-02514-JGB-SHK, Docket No. 561, 2022 WL 2189624 (C.D.
    Cal. March 31, 2022) ............................................................................................. *passim*

*Robledo v. Randstad US, L.P.*,
    2017 WL 4934205 (N.D. Cal. Nov. 1, 2017) .................................................................... 5

*Sanders v. Hayden*,
    544 F.3d 812 (7th Cir. 2008) ............................................................................................. 3

*Smith v. Dart*,
    803 F.3d 304 (7th Cir. 2015) ............................................................................................. 3

*Tourscher v. McCullough*,
    184 F.3d 236 (3d Cir. 1999) .............................................................................................. 3

*Villarreal v. Woodham*,
    113 F.3d 202 (11th Cir. 1997) ........................................................................................... 3

*Williams v. Coleman*,
    536 F. App'x 694 (9th Cir. 2013) ...................................................................................... 3

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

SD #4891-6471-7108 v1     - iii -     1:22-CV-00868-ADA-BAK/EPG
                                       MOTION TO STAY PROCEEDINGS

**Federal Statutes**

8 U.S.C. § 1555 ...........................................................................................................................11

8 U.S.C. § 1555(d) .........................................................................................................................2

**Other Authorities**

Department of Homeland Security Committee Appropriations Report 117-87
    ("Voluntary Work Program...") ................................................................................................2

Department of Justice Appropriation Act, 1979, Pub. L. No. 95–431, 92 Stat.
    1021, 1027 (1978) ..................................................................................................................11

Fed. R. Evid. 201(b)(2) ..................................................................................................................2

https://www.ca9.uscourts.gov/calendar/panel_sittings/727683.html ............................................3

https://www.ccijustice.org/post/breaking-detained-labor-strikers-sue-geo-group-
    over-1-a-day-pay ......................................................................................................................2

https://www.govinfo.gov/content/pkg/CRPT-117hrpt87/pdf/CRPT-117hrpt87.pdf .....................2

Ninth Circuit Office of the Clerk Frequently Asked Questions, Updated December
    2019, *available at*
    https://www.ca9.uscourts.gov/general/faq/#:~:text=The%20Court%20has%20n
    o%20time,3%20months%20to%20a%20year (last visited August 10, 2022) ...........................7

*Nwauzor v. GEO Group, Inc.*,
    Case No. 21-36024 ..................................................................................................................3

Washington Appeal Will Impact Law ............................................................................................9

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

SD #4891-6471-7108 v1      - iv -      1:22-CV-00868-ADA-BAK/EPG
MOTION TO STAY PROCEEDINGS

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The instant action is neither novel nor unique. Rather, it is one of several similar lawsuits filed across the State (and the country) in recent years that call on our nation's federal courts to classify Immigration and Customs Enforcement ("ICE") created and contractually-mandated programs (designed to keep detained persons active and their common living areas clean and sanitary) as underpaid labor and human trafficking.[1] As explained in more detail below, many of the basic legal constructions upon which these cases rest are currently being reviewed by the Ninth Circuit, with oral arguments set for early October. GEO respectfully requests that this Court stay this case until after the Ninth Circuit issues its opinion as to the legal framework governing detainees' claims that they are employees, and rules on whether or not the affirmative defenses being presented to the Ninth Circuit will be applicable to the trafficking/forced labor claims made in this case. Notably, on March 31, 2022, the Honorable Judge Jesus Bernal in the Central District of California in a nearly identical case alleging unpaid labor and trafficking at the GEO-operated ICE Detention Facility in Adelanto, stayed the proceedings pending the outcome of the Ninth Circuit's deliberations. *See Novoa v. GEO*, Case No. 5:17-cv-02514-JGB-SHK, Docket No. 561, 2022 WL 2189624 (C.D. Cal. March 31, 2022), Ex. A to Coleman Decl.

Plaintiffs in this case seek a determination that the VWP as implemented by Defendant GEO, pursuant to and in accordance with the requirements of its federal contract for the provision of support services at the Mesa Verde and Golden State Annex ICE federal processing centers ("the Centers"), gives rise to an employment relationship under state labor laws between those Plaintiffs who volunteered to participate in the VWP and GEO. They also seek a determination that the ICE-mandated policies requiring Plaintiffs to keep their personal housing areas clean constitute human trafficking by GEO.

---

[1] Disputes about the ICE Voluntary Work Program are pending before the following courts, among others: *Menocal v. GEO*, District of Colorado, Case No. 14-CV-02887-JLK; *Owino v. CoreCivic, Inc.*, Southern District of California, Case No. 17-cv-1112-JLS; *Gonzalez v. CoreCivic, Inc.*, Western District of Texas, Case No 1:18-CV-00169-LY; *Barrientos v. CoreCivic, Inc.*, Middle District of Georgia, Case No. 4:18-CV-00070-CDL.

This Court need not guess as to whether this characterization of Plaintiffs' Complaint is accurate. Plaintiffs have issued a public statement admitting that their case is not only interrelated to others currently pending, but also seeks the same relief.[2] Plaintiffs bring attention to the other cases in their statement because the issues in this and other similar cases are largely about changing federal immigration policy through the orchestrated filing of novel and contrived litigation. The cases seek to judicially revise immigration policies because immigration activists have been unable to persuade legislatures to act.[3]

Without the Ninth Circuit's input, there is little legal precedent to guide courts through these novel interpretations of otherwise long-standing law. But the precedent that does exist indicates that a judicial finding that an ICE-mandated detention program is "employment" would equate to legislating from the bench. *Ndambi v. CoreCivic, Inc.,* 990 F.3d 369, 375 (4th Cir. 2021) ("Our point is emphatically not one of advocacy for any method of detention or custody. It is simply not within this court's authority to amend statutes from the bench . . . What appellants propose is a fundamental alteration of what it means to be an 'employee.' Appellants are not employees in the free labor market contemplation of the Act, and we are powerless to make them so."). To that end, the underlying legal issues remain unsettled in this jurisdiction.[4]

---

[2] *See* BREAKING: Detained Labor Strikers Sue GEO Group Over $1-A-Day Pay, California Collaborative for Immigrant Justice, available at https://www.ccijustice.org/post/breaking-detained-labor-strikers-sue-geo-group-over-1-a-day-pay, last visited August 3, 2022. (Stating Plaintiffs case in this lawsuit was "inspired" by others pending around the country including the one in "Adelanto").

[3] Currently, federal legislation endorses paying detainees $1.00 per day for any chores or work performed. 8 U.S.C. § 1555(d). Last year, a Congressional committee introduced an appropriations bill to increase the amount detainees would be paid under various work programs to the prevailing minimum wage, but failed to obtain a consensus vote. *See* Department of Homeland Security Committee Appropriations Report 117-87 ("Voluntary Work Program.—The recommendation includes a new provision (section 221) establishing that the allowances provided to detained individuals for work performed in detention facilities may not be less than the local prevailing minimum wage. The bill includes an increase of $10,000,000 above the request to begin implementing this requirement in fiscal year 2022.") This document is accessible online at https://www.govinfo.gov/content/pkg/CRPT-117hrpt87/pdf/CRPT-117hrpt87.pdf - and GEO seeks judicial notice of it. Fed. R. Evid. 201(b)(2). The document is also Exhibit C to the Declaration of Susan Coleman, filed herewith.

[4] Indeed, Plaintiffs' quest to fundamentally change the nature of immigration detention—and not simply address the legal claims of their clients—is clear from paragraphs 38 through 44 of their Complaint, where the allegations generally disparage the federal government's policy choice to allow for private contractors to participate in the immigration detention realm—but do not

The Ninth Circuit is poised to weigh in on this debate in two related appeals: *Nwauzor v. GEO Group, Inc.*, Case No. 21-36024; and *Washington v. GEO Group, Inc.*, Case No. 21-36025 (collectively the "Washington Appeals"). The cases are fully briefed and set for oral argument on October 6, 2022—less than three weeks from the date of this filing.[5] The legal issues in the Washington Appeals are unsettled in the Ninth Circuit and likely to be precedential in this case. GEO anticipates that the Ninth Circuit will join the majority of courts across the country in finding that detainees are not employees. And even if it does not, the Ninth Circuit will provide much needed guidance as to the appropriate test to apply in assessing the underlying claims in this case.

To be sure, the Ninth Circuit's guidance would be invaluable. When analyzed under the existing legal landscape related to employment and detention services, the legal conclusions that Plaintiffs' Complaint seeks to have this Court adopt run against the grain. Each federal appellate court to address whether ICE detainees who clean their housing areas, and who perform other chores where they are housed while detained by the federal government, should be considered employees of the facility under state law has ruled that detainees are not transformed into employees simply because they contribute to the facility rather than sitting idle all day. *See Ndambi,* 990 F.3d at 375; *Alvarado Guevara v. I.N.S.,* 902 F.2d 394, 395 (5th Cir. 1990). More generally, every Federal Court of Appeals in the country has held that Federal and state minimum wage laws do not apply to on-premises work programs in detention facilities.[6] The Ninth Circuit's

---

provide any context relevant to the instant case.

[5] See https://www.ca9.uscourts.gov/calendar/panel_sittings/727683.html

[6] *See Loving v. Johnson*, 455 F.3d 562, 563 (5th Cir. 2006) (criminal detainee); *Bennett v. Frank*, 395 F.3d 409, 409 (7th Cir. 2005) (same); *Gambetta v. Prison Rehab. Indus. & Diversified Enters., Inc.*, 112 F.3d 1119, 1124 (11th Cir. 1997) (same); *Danneskjold v. Hausrath*, 82 F.3d 37, 43–44 (2d Cir. 1996) (same); *Abdullah v. Myers*, 52 F.3d 324, at *1 (6th Cir. 1995) (same); *McMaster v. Minnesota*, 30 F.3d 976, 980 (8th Cir. 1994) (same); *Henthorn v. Dep't of Navy*, 29 F.3d 682, 686–87 (D.C. Cir. 1994) (same); *Franks v. Okla. State Indus.*, 7 F.3d 971, 973 (10th Cir. 1993) (same); *Gilbreath v. Cutter Biological, Inc.*, 931 F.2d 1320, 1325 (9th Cir. 1991) (same); *Smith v. Dart*, 803 F.3d 304, 314 (7th Cir. 2015) (pre-trial detainee); *Tourscher v. McCullough*, 184 F.3d 236, 243–44 (3d Cir. 1999) (same); *Villarreal v. Woodham*, 113 F.3d 202, 206–07 (11th Cir. 1997) (same); *Sanders v. Hayden*, 544 F.3d 812, 814 (7th Cir. 2008) (civil detainee); *Miller v. Dukakis*, 961 F.2d 7, 9 (1st Cir. 1992) (same); *Williams v. Coleman*, 536 F. App'x 694 (9th Cir. 2013) (same); *see also Ndambi,* 990 F.3d at 375 (immigration detainees); *Alvarado Guevara*, 902 F.2d at 396 (same); *Guevara v. I.N.S.,* 954 F.2d 733, *1-*2 (Fed. Cir.

opinion is therefore likely to provide important clarity regarding the controlling issues in this case.

As mentioned above, a stay would be consistent with the action taken in a related ongoing case in the Ninth Circuit, the "Adelanto" lawsuit which inspired Plaintiffs to bring the instant action (also referenced in paragraph 60 of Plaintiffs' complaint) is currently pending before the Honorable Judge Jesus Bernal in the Central District of California, 5:17-cv-02514-JGB. The *Novoa* case, which addresses the very same issues as presented by the instant case, has been stayed pending a decision in the Washington Appeals. As aptly stated by the Judge Bernal, "a decision on the merits in the Washington Appeals will hold precedential value[,]" specifically because a "Ninth Circuit decision in favor of GEO on the issues of intergovernmental immunity, derivative sovereign immunity, and preemption may moot the instant action." *Novoa,* 2022 WL 2189624 at *3. This logic fully applies here as well. In short, as in *Novoa,* because the instant Complaint contemplates lengthy and protracted litigation regarding issues that are likely to be clarified by the Ninth Circuit in the near future, the interests of judicial economy strongly mitigate in favor of staying all proceedings in the above-captioned case pending the outcome of the Washington Appeals. Accordingly, GEO moves to stay the instant action pending a final decision from the Ninth Circuit Court of Appeals in the Washington Appeals.

## II.   THIS COURT SHOULD STAY PROCEEDINGS

### A.   Applicable Law

"A district court has discretionary power to stay proceedings in its own court." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1109 (9th Cir. 2005). This power "is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). In the context of a stay pending the outcome of an appeal, "[a] trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case."

---

1992) (unpublished) (same).

*Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979).

While district courts have discretion in ruling on whether a stay is appropriate, the ultimate decision to grant or deny a stay must "be guided by sound legal principles." *Nken v. Holder*, 556 U.S 418, 434 (2009). Where the basis for the stay is to await the outcome of an independent proceeding, such as here, the Ninth Circuit has enumerated three factors that must guide a court's decision:

(1) The possible prejudice or hardship to the non-moving party which may result from the granting of a stay;

(2) The hardship or inequity that the moving party may suffer in being required to go forward; and

(3) The orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay.

*Lockyer*, 398 F.3d at 1110 (9th Cir. 2005) (citing *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962)).

Applying these factors, district courts routinely stay proceedings where resolution of an appeal in another matter may provide guidance to the district court in deciding issues before it. *See Landis*, 299 U.S. at 254; *see, e.g., Fed. Home Loan Mortg. Corp. v. Kama*, Case No. 14-cv-137, 2016 WL 922780, at *8-9 (D. Haw. Mar. 9, 2016) (granting stay where Ninth Circuit's resolution of related cases "w[ould] likely involve an analysis of" issues that would "provid[e] further guidance" to the district court). Likewise, courts routinely grant stays in complex cases when a forthcoming appellate decision could reverse the proceedings below and require the lower court to "consider [the] issue twice." *Robledo v. Randstad US, L.P.*, Case No. 17-cv-01003-BLF; 2017 WL 4934205, at *4 (N.D. Cal. Nov. 1, 2017) (granting stay in "large class action," which "could be rendered moot" by a pending appellate ruling). This approach not only preserves resources for both the parties and the Court, but also "reduce[s] the risk of inconsistent rulings that the appellate court[] might then need to disentangle." *Ali v. Trump*, Case No. 17-cv-135, 2017 WL 1057645, at *5 (W.D. Wash. Mar. 17, 2017).

### **(1)** **There Would Be Limited Prejudice or Hardship to Plaintiffs.**

Turning to the first factor, a stay is appropriate because Plaintiffs will not unreasonably suffer undue prejudice or hardship while dispositive issues are resolved by the Ninth Circuit. Plaintiffs' case has only just been filed and is in the initial stages.  By filing their Complaint, Plaintiffs have preserved the right to collect any damages they may be awarded under the applicable statutes of limitation. Thus, they will not suffer any undue prejudice or hardship should the case be briefly stayed to allow the Ninth Circuit to weigh in on the novel issues raised by the other cases.

Moreover, other cases across the country addressing the same issues have been pending for years due to the complexity of the legal issues at hand and the amount and scope of discovery that the detainee- plaintiffs have typically sought. In other words, there is no quick path to resolution. GEO has no reason to believe this case would be any different, as its complaint is largely borrowed from the other cases. Therefore, a short delay to await the Ninth Circuit's controlling opinion would not cause any harm or undue hardship to Plaintiffs. Indeed, in *Novoa,* even though the case was scheduled for trial, the Court agreed Plaintiffs would not suffer a hardship if the case was stayed pending a decision from the Ninth Circuit because "any delay is unlikely to be indefinite." *Novoa v. GEO,* 2022 WL 2189624, at *2.

Nevertheless, GEO anticipates that Plaintiffs will argue that they will be prejudiced by the short delay inherent in a stay. But delay alone is not undue prejudice. As explained by the Honorable Judge Edward J. Davila of the Northern District of California, "[w]hether good or bad, delay is an unavoidable consequence to any stay, and numerous courts have determined that a general claim of delay is not enough on its own to constitute undue prejudice." *Convergence Techs. (USA), LLC v. Microloops Corp.*, No. 5:10-CV-02051 EJD, 2012 WL 1232187, at *2 (N.D. Cal. Apr. 12, 2012); *see also Campbell v. Oregon Dep't of State Lands*, No. 2:16-CV-01677-SU, 2017 WL 3367094, at *3 (D. Or. Aug. 4, 2017).

In addition to the delay being finite, there are at least three reasons why the delay in this case pending resolution of the Washington Appeals will not constitute undue prejudice to Plaintiffs: (1)  any damages Plaintiffs may accrue and be entitled to during the stay will be

compensable should the trial proceed following the Ninth Circuit's decision; (2) as they concede in Paragraph 299 of their Complaint, Plaintiffs are still working to exhaust their PAGA claims, so delay is inevitable even without a stay; and (3) the length of the delay will be minimized because the Washington Appeals have already been fully briefed, and, as noted above, the Ninth Circuit will be hearing oral argument within the next three weeks. Therefore, the Washington Appeals could be ruled upon at any point after October 6, 2022, and it is more likely than not that a decision will issue within six months.[7]

Furthermore, Plaintiffs will retain full autonomy not to participate in the VWP during the pendency of the stay. GEO notes that no person housed at the Centers, including any of the named Plaintiffs, is or will be required to participate in the VWP, which is, always has been, and will continue to remain entirely voluntary in nature. Accordingly, the first factor—that Plaintiffs will not unreasonably suffer prejudice or hardship as a result of a stay of these proceedings pending the outcome of the Washington Appeal—weighs in favor of entry of a stay.

**(2)  GEO Will Suffer Significant Prejudice and Hardship if a Stay Is Not Entered.**

The second factor to be considered, whether "[t]he hardship or inequity that the moving party may suffer in being required to go forward," also weighs in favor of the stay. GEO will be irreparably prejudiced if it is required to participate further in these proceedings prior to the Ninth Circuit issuing its guidance because the likelihood of inconsistent rulings, duplicative proceedings, and redundant work is very high.

In addition to the employment issue which will be resolved by the Ninth Circuit, GEO's concurrently filed motion to dismiss also presents two different federal constitutional defenses that overlap with the issues pending before the Ninth Circuit in the Washington Appeals, either of which would be sufficient to bar some or all of Plaintiffs' claims in this case: (1) state minimum

---

[7] Appeals in the Ninth Circuit are typically resolved 9-12 months after the completion of briefing, and as early as 3 months after oral argument. *See* Ninth Circuit Office of the Clerk Frequently Asked Questions, Updated December 2019, *available at* https://www.ca9.uscourts.gov/general/faq/#:~:text=The%20Court%20has%20no%20time,3%20months%20to%20a%20year (last visited August 10, 2022). Briefing was complete in the Washington Appeals in early June, making a decision likely to issue between March and June of 2023.

1  wage laws, as applied to the VWP, are preempted because Congress has set the rate to be paid to
2  VWP participants; and (2) the defense of derivative sovereign immunity shields GEO from
3  liability arising out of its payment of $1 per day to detainees participating in the VWP because the
4  Federal Government in its contract with GEO authorized and directed GEO to develop and
5  implement a VWP at the Adelanto facility and to pay "at least $1 per day" to VWP detainee
6  participants. Likewise, GEO anticipates raising additional defenses in the case arising out of the
7  doctrine of intergovernmental immunity (both direct and discriminatory). Those defenses also are
8  likely to be impacted by the Ninth Circuit's decision in the Washington Appeals. Should the
9  Ninth Circuit determine that *any* of the federal constitutional defenses are available, it would
10 likely require dismissal in this case without further proceedings. As a result, without a stay GEO
11 would be forced to begin the process of costly discovery and motions practice for issues that may
12 be rendered moot in the near future. GEO would be unable to recoup the costs of this process, or
13 the time spent on the same. Thus, the second factor leans in favor of a stay.
14        At a minimum, the Ninth Circuit's opinion would narrow and refine the issues for trial by
15 clarifying the legal standards at issue. Indeed, a ruling in the Ninth Circuit on the Washington
16 Appeals will likely allow this Court to narrow the issues in this litigation as presented in the
17 concurrently-filed motion to dismiss. Likewise, the decision will benefit Plaintiffs as well, as it
18 will provide guidance as to the burden of proof in their case (if any claims remain viable). At
19 present, there is no uniform standard or elements from which Plaintiffs can pursue their policy
20 changes in this forum. Focusing the issues early in the case would save both parties the time and
21 expense of unnecessary discovery and motions practice. Conversely, if a stay does not issue, it is
22 likely the parties will engage in extensive motions practice and discovery, only to learn that the
23 issues could have been resolved on the pleadings, or even worse, that discovery and motions
24 practice on different issues will be necessary to comport with the Ninth Circuit's forthcoming
25 Washington Appeals opinion.
26        As noted, the cost of additional (unnecessary) discovery, motions practice, and eventually
27 trial cannot be recouped by GEO. Thus, unlike any delay faced by Plaintiffs, the harm that GEO
28 could face absent a stay would not be recoverable. As such, a stay should be granted to avoid

1  unnecessarily subjecting GEO to the burdens that may be obviated by the outcome of the
2  Washington Appeals.
3       In short, the Ninth Circuit's decision on common issues of law will be binding upon this
4  Court. While the Washington Appeals may not dispose of every issue in this case, the Ninth
5  Circuit's opinion is likely to provide substantial guidance to this Court and the parties in
6  narrowing, resolving, or eliminating the claims before this Court. Proceeding in the absence of
7  such guidance would be inefficient, waste the resources of the Court and the parties, and
8  potentially result in inconsistent rulings that would need to be corrected in light of the Ninth
9  Circuit's decision. A stay would conserve the resources of this Court, and the parties, by
10  eliminating the very real possibility of the parties proceeding to trial and judgment, only to later
11  receive a ruling on the Washington Appeals from the Ninth Circuit reversing, in whole or in part,
12  that judgment. Indeed, as the Honorable Judge Bernal concluded, "[a] stay would avoid the risk
13  of litigating these issues twice. By contrast, to proceed without a stay risks forcing the parties and
14  the Court to expend needless resources." *Novoa v. GEO,* 2022 WL 2189624, at *3. Accordingly,
15  requiring GEO to go forward absent the forthcoming guidance from the Ninth Circuit on the
16  Washington Appeals would lead to significant hardship, so the second factor weighs in favor of a
17  stay.

18      **(3)**    **A Stay Would Promote Judicial Economy Because the Washington Appeal**
19             **Will Impact Law Governing This Case.**

20       The third factor of judicial economy similarly counsels in favor of a stay. As Plaintiffs'
21  public statement makes clear, their allegations were "inspired" by those underlying the
22  Washington Appeals. The Washington Appeals promise to provide significant guidance as to the
23  dispositive issues in this case.
24       As an initial matter, the Ninth Circuit's ruling is likely to clarify more generally the
25  standard for when a detained person may be classified as an "employee" while detained. Because
26  it will be considering the same ICE program that is at issue here, this guidance will streamline the
27  relevant issues in this case. While it is true that the Washington Appeals involve Washington
28  State minimum wage law—whereas here, the underlying claims relate to California's minimum

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

SD #4891-6471-7108 v1      - 9 -      1:22-CV-00868-ADA-BAK/EPG
MOTION TO STAY PROCEEDINGS

wage law—this distinction does not provide a basis to deny a stay. To be sure, "[w]here a stay is considered pending the resolution of another action, the court need not find that two cases possess identical issues; a finding that the issues are substantially similar is sufficient to support a stay." *Energy Monster v. Monster Energy Co.*, No. ED-CV-202528-JGB-SPX, 2021 WL 3598862, at *3 (C.D. Cal. Apr. 23, 2021). Indeed, beyond the employment issue, the Washington Appeals are likely to resolve the application of various immunity principles to ICE's detention standards. These issues are also central to the instant case, and do not turn on state law. As such, the Washington Appeal is certainly "substantially similar" to the instant matter. *See Landis*, 299 U.S. at 256 ("True, a decision in the cause then pending in New York may not settle every question of fact and law in suits by other companies, but in all likelihood it will settle many and simplify them all.").

To that end, in the *Novoa* matter, the Honorable Judge Bernal found the cases were substantially similar such that a stay was appropriate. *Novoa*, 2022 WL 2189624, at *3. This authority is highly persuasive here. Indeed, large swaths of Plaintiffs' Complaint in this case are taken from the operative Complaint in the *Novoa* case, as can be seen by way of example in the excerpts below:[8]

<u>Paragraph 22 of the operative *Novoa* Complaint (Dkt. 184):</u>

**A. Immigration detention is civil—not criminal.**
    22. Each year, hundreds of thousands of individuals are detained in geographically isolated immigration detention facilities while awaiting immigration or citizenship status determinations. These detainees include U.S. citizens, lawful permanent residents (green card holders) with longstanding family and community ties, survivors of torture, asylum seekers, victims of human trafficking, children, and pregnant women.

<u>Paragraph 33 of Plaintiffs' *Gomez* Complaint:</u>

**A. Immigration Detention Is Civil—Not Criminal.**
    33. Each year, hundreds of thousands of individuals are detained in geographically isolated immigration detention facilities because their immigration status is contested. These detained individuals include U.S. citizens, lawful permanent residents (green card holders) with longstanding family and

---

[8] The similarities can also be seen by comparing the footnotes of the complaints, which are nearly identical.

community ties, survivors of torture, asylum seekers, victims of human trafficking, children, and pregnant women.

Because the complaints mirror one another, it is difficult to draw a principled distinction between *Novoa* and the instant case for purposes of determining whether a stay should issue. Accordingly, this case, like *Novoa,* is substantially similar to the Washington Appeals and should be stayed.

For the avoidance of doubt, the Ninth Circuit is poised to address the following issues that will bear directly upon the issues in this case:

- Whether payment of $1 per day to detainees as "authorized and directed by the Government of the United States" are protected by the Federal Government's sovereign immunity, *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 166 (2016), where, as in both this case and the Washington Appeals, detainees allege that the payment failed to satisfy minimum standards. *See*, *e.g.*, Complaint at ¶¶ 223-224.

- Whether the contract's minimum standards for the payment of detainees in the VWP preempt state laws requiring higher payments.

- Whether application of a state minimum wage law on a federal detention facility impermissibly regulates the performance of federal activities by a federal contractor in violation of settled precedent. *Hancock v. Train*, 426 U.S. 167, 180 (1976) (holding that state regulation of a federal contractor conducting federal operations constitutes an impermissible direct regulation of the Federal Government because the state law effectively "places a prohibition on the Federal Government").

- Whether a state minimum wage law, as applied to detainees in a work program at a federal detention facility, is preempted because Congress alone has the power to "specif[y] from time to time" the "rate" at which "payment of allowances" may be made to "aliens, while held in custody under the immigration laws, for work performed," 8 U.S.C. § 1555. Congress has set the rate at $1 per day, Department of Justice Appropriation Act, 1979, Pub. L. No. 95–431, 92 Stat. 1021, 1027 (1978)

- Whether persons volunteering to participate in a work program at a detention facility are employees for purposes of state and federal minimum wage laws in view of the

1  fact that every Court of Appeals in the country has held they are not.

2  Proceeding to trial without this guidance would be wasteful of this Court's judicial

3  resources at a time when many parties are in line for a trial date following the backlog caused by

4  COVID-19 delays. In addition to clarifying the applicable law, the Ninth Circuit's opinion could

5  eliminate some or all of Plaintiffs' claims altogether. In sum, the entry of a stay pending appeal

6  by this Court will ensure this case will proceed in a manner that minimizes the time and expense

7  of all parties and facilitates judicial economy on the basis of soon-to-be established Ninth Circuit

8  law, thus satisfying the third factor in deciding whether a stay should issue.

## III.  CONCLUSION

For the reasons noted above, this Court should stay all proceedings in this matter pending a ruling on the Washington Appeals by the Ninth Circuit. This stay would promote judicial economy, save the parties and the Court from incurring unnecessary expenditures in the interim, and would not unduly prejudice Plaintiffs.

Dated:  September 19, 2022           BURKE, WILLIAMS & SORENSEN, LLP


                                      By: */s/ Susan E. Coleman*
                                            Susan E. Coleman

                                      Attorneys for Defendant
                                      THE GEO GROUP, INC.


Dated: September 19, 2022            THE GEO GROUP, INC.


                                      By: */s/ Wayne Calabrese*
                                            Wayne Calabrese
                                            Joseph Negron

                                      Attorneys for Defendant
                                      THE GEO GROUP, INC.