Susan E. Coleman (SBN 171832)
E-mail: scoleman@bwslaw.com
BURKE, WILLIAMS & SORENSEN, LLP
444 South Flower Street, Suite 2400
Los Angeles, CA 90071-2953
Tel: 213.236.0600    Fax: 213.236.2700

Wayne Calabrese
*(Admitted Pro Hac Vice)*
E-mail: wcalabrese@geogroup.com
Joseph Negron
*(Admitted Pro Hac Vice)*
E-mail: jnegron@geogroup.com
THE GEO GROUP, INC.
4955 Technology Way
Boca Raton, Florida 33431
Tel: (561) 999-7344  Fax: (561) 999-7647

Attorneys for Defendant
THE GEO GROUP, INC.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE RUBEN HERNANDEZ GOMEZ; SALESH PRASAD; GUILLERMO MEDINA REYES; EDGAR SANCHEZ; ADAN CASTILLO MERINO; IVAN OLIVA SIERRA; FIDEL GARCIA, ISAAC CARDONA HERNANDEZ, and PEDRO JESUS FIGUEROA PADILLA, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE GEO GROUP, INC.,<br><br>Defendant. | Case No. 1:22-cv-00868-ADA-CDB<br><br>**DEFENDANT THE GEO GROUP, INC'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**<br><br>[Fed. R. Civ. P. 12(b)(1), 12(b)(6)]<br><br>Date:   February 13, 2023<br>Time:   1:30 p.m.<br>Courtroom: 1, 8th floor - Fresno<br><br>Judge: Honorable Ana I. de Alba |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........................................................................................................... 1
II. GEO IS IMMUNE FROM SUIT .................................................................................. 1
    A. GEO Acted as Authorized and Directed by ICE ............................................... 1
        1. GEO was authorized to pay detainees $1 per day for participation in the Voluntary Work Program ................................................................... 2
        2. GEO was directed to provide for discipline for failure to clean ................. 3
III. INTERGOVERNMENTAL IMMUNITY BARS SUIT .................................................. 5
IV. PLAINTIFFS' CLAIMS ARE PREEMPTED ............................................................... 6
V. DETAINEES IN THE VWP ARE NOT EMPLOYEES ................................................. 7
VI. THE TVPA DOES NOT PROVIDE A PRIVATE RIGHT OF ACTION FOR INJUNCTIVE RELIEF .................................................................................................. 9
VII. CONCLUSION ............................................................................................................. 10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Alvarado Guevara v. I.N.S.*,
  902 F.2d 394 (5th Cir. 1990) ................................................................................................... 7

*Bennett v. Clark Cty. Sch. Dist.*,
  24 F.3d 244 (9th Cir. 1994) ..................................................................................................... 8

*Bennett v. Frank*,
  395 F.3d 409 (7th Cir. 2005) ................................................................................................... 8

*Gamble v. GMAC Mortg. Corp.*,
  No. C-08-05532 RMW, 2009 WL 400359 (N.D. Cal. Feb. 18, 2009) ................................ 3, 4

*GEO Grp., Inc. v. Newsom*,
  50 F.4th 745 (9th Cir. 2022) ............................................................................................ 2, 5, 6

*Gilbreath v. Cutter Biological, Inc.*,
  931 F.2d 1320 (9th Cir. 1991) ................................................................................................. 8

*Gurrola v. Duncan*,
  519 F. Supp. 3d 732 (E.D. Cal. 2021) ..................................................................................... 9

*Juino v. Livingston Parish Fire Dist. No. 5*,
  717 F.3d 431 (2013) ................................................................................................................ 8

*Matherly v. Andrews*,
  859 F.3d 264 (4th Cir. 2017) ................................................................................................... 8

*Menocal v. GEO Grp., Inc.*,
  113 F. Supp. 3d 1125 (D. Colo. 2015) .................................................................................... 8

*Miller v. Dukakis*,
  961 F.2d 7 (1st Cir. 1992) ....................................................................................................... 8

*Morgan v. MacDonald*,
  41 F.3d 1291 (9th Cir. 1994) ................................................................................................... 8

*Ndambi v. CoreCivic, Inc.*,
  990 F.3d 369 (4th Cir. 2021) ............................................................................................... 7, 8

*Novoa v. GEO Grp., Inc.*,
  No. EDCV172514JGBSHKX, 2021 WL 4913286 (C.D. Cal. Sept. 30, 2021) .................... 2, 3

*Sanders v. Hayden*,
  544 F.3d 812 (7th Cir. 2008) ................................................................................................... 8

*Steinle v. City & Cnty. of San Francisco*,
   919 F.3d 1154 (9th Cir. 2019)...........................................................................................6

*Tourscher v. McCullough*,
   184 F.3d 236 (3d Cir. 1999)..............................................................................................8

*Villarreal v. Woodham*,
   113 F.3d 202 (11th Cir. 1997)...........................................................................................8

**Federal Statutes**

8 U.S.C. § 1555...........................................................................................................................7

18 U.S.C. § 1595(a) ....................................................................................................................9

18 U.S.C § 1595A(a)...................................................................................................................9

Pub. L. No. 95-431, 92 Stat. 1021................................................................................................7

**Other Authorities**

Abigail Johnson Hess, *California Is Paying Inmates $1 an Hour to Fight
   Wildfires*, CNBC Careers (Nov. 12, 2018),
   *https://www.cnbc.com/2018/08/14/california-is-paying-inmates-1-an-hour-to-
   fight-wildfires.html* ..........................................................................................................8

*Conservation (Fire) Camps*, Cal. Dep't of Corrs. & Rehab.,
   *https://www.cdcr.ca.gov/facility-locator/conservation-camps/*. ......................................8

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

- iii -

1:22-CV-00868-ADA-CDB
MOTION TO DISMISS SECOND AM. COMPL.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiffs' rhetoric-filled response fails to provide a plausible basis as to why their claims should not be dismissed. As detailed below and in GEO's initial motion, Plaintiffs fail to identify allegations, which if true, would preclude application of derivative sovereign immunity, intergovernmental immunity, or preemption. The Second Amended Complaint (hereinafter "SAC") and the exhibits which are incorporated by reference show that GEO's actions related to the ICE Voluntary Work Program ("VWP") and detainee cleanup were authorized and directed by Immigration and Customs Enforcement ("ICE") and therefore GEO is entitled to derivative sovereign immunity. Similarly, California law cannot supersede federal law in the field of immigration detention under the long-standing constitutional doctrines of intergovernmental immunity and preemption, providing further support for dismissal. And, even if GEO's immunity defenses did not warrant dismissal of the SAC, Plaintiff's also fail to rebut, let alone address, the daunting fact that that nearly every federal circuit court to address the issue of detainee work has concluded that detainee-volunteers are not employees under the law—a devastating blow to their legal theory. In sum, Plaintiffs' response falls short of saving its claims from dismissal.

## II. GEO IS IMMUNE FROM SUIT.

### A. GEO Acted as Authorized and Directed by ICE.

As set forth in GEO's motion to dismiss, Plaintiffs claims cannot proceed if GEO is immune from suit under the principles of derivative sovereign immunity. In their Response, Plaintiffs do not dispute the two-pronged legal test set forth by GEO. Rather, they concede the first prong:that the acts of GEO were authorized by the federal government. Plaintiffs attack only the second prong on the basis that GEO has not sufficiently argued that it was authorized by ICE to have detainees clean their living areas or to pay detainees $1 per day for participation in the VWP. ECF 49 at 14.[1] But, Plaintiff's argument ignores much of what GEO set forth in its initial motion. Furthermore, it is in conflict with the Ninth Circuit's recent *en banc* ruling that GEO, "*at the direction of Congress*,

---

[1] Plaintiffs argue that GEO has not made any argument that its acts were authorized and directed by ICE, ECF 49 at 9, but a review of GEO's moving papers makes clear that Plaintiff's claims are at best hyperbolic.

*Immigration and Customs Enforcement (ICE)* carries out extensive detention operations, a substantial portion of which takes place in California." *GEO Grp., Inc. v. Newsom*, 50 F.4th 745, 750 (9th Cir. 2022) (emphasis added). Accordingly, as explained in more detail below, Plaintiffs' Response fails to demonstrate a colorable basis as to why this case should not be dismissed.

        1.     GEO was authorized to pay detainees $1 per day for participation in the Voluntary Work Program.

In opposition to GEO's Motion, Plaintiffs first argue that GEO "does not argue that it was directed by ICE to pay detained workers $1 per day[.]" ECF 49 at 9. This is is inaccurate On ECF page 16 of GEO's motion to dismiss (ECF 47), GEO made clear: "ICE authorized GEO to pay a minimum of $1 per day to detainees who voluntarily participate in the VWP."[2] In support, GEO cited the allegations made by Plaintiffs in their SAC (ECF No. 46 at ¶¶ 6, 59) and two documents incorporated by reference into Plaintiffs' SAC, (i) the Performance Based National Detention Standards (PBNDS) (ECF 47-2 Exhibit A) and (ii) GEO's Contract with ICE (ECF 47-2 Exhibit B).

Plaintiffs do not refute these points, instead, citing to dicta from the *Novoa* case and the *Menocal* case as a poor substitute for allegations or evidence to support their claims. This Court should disregard these citations as they do not cure the deficiencies in Plaintiffs' SAC. Neither case has any bearing on the sufficiency of the allegations here. Indeed, *Novoa* initially included a class of all facilities nationwide (including those at issue here) until the District Court decertified the nationwide class—finding that too many factual differences existed among the facilities. *Novoa v. GEO Grp., Inc.*, No. EDCV172514JGBSHKX, 2021 WL 4913286, at *7 (C.D. Cal. Sept. 30, 2021) ("Because the sanitation policies and their application may differ across facilities, the Court is no longer persuaded that there are common answers as to GEO's potential violation of the TVPA across its detention facilities.").[3] Going a step further, the Honorable Judge Bernal found that upon

---

[2] GEO also argued "there is no question GEO has 'simply performed as [ICE] directed,'" on ECF page 13 of its motion, and "in making the VWP available for detainees, and not employees, GEO simply acted as ICE directed" at ECF page 17, among other places. Indeed, much of the motion is spent explaining the direction and authorization GEO received from ICE through its contracts, the applicable standards, and federal guidance.

[3] Indeed, the court's rulings in that case were not based upon the contracts and documents applicable to the

reviewing the policies from other locations, many other GEO facilities did not show any indication of legal violations like those alleged in *Novoa* because the policies did "not in fact require detainees to clean areas beyond those listed in the PBNDS." *Id.* To that end, dicta about the evidence in *Novoa* that is specific to the Adelanto facility cannot be used as a stand-in for evidence or allegations in this case.

When Plaintiffs' Response is limited to the allegations *in this case* and documents incorporated into the SAC *in this case*,[4] there is no question that GEO acted as authorized and directed by ICE. The Contract between GEO and ICE provides at line items 0007A and 0007B that GEO will provide a "Detainee Work Program" and the "rate" will be "$1.00 Per Day Per Detainee." ECF 47-2 at 480 (Exhibit B-23). Likewise, the PBNDS provide that detainees will receive "monetary compensation" for participating in the Voluntary Work Program, which shall be "at least $1.00 (USD) per day." ECF 47-2 at 388 (Exhibit A-387). Plaintiffs offer no contrary citations within the documents that would call into question the directive by ICE to pay detainees $1.00 per day, per detainee, for the VWP. Nor do they point to other colorable allegations that GEO was directed to classify detainees as "employees" under California law.[5] Importantly, where "an exhibit to a pleading is inconsistent with the pleading, the exhibit controls." *Gamble v. GMAC Mortg. Corp.*, No. C-08-05532 RMW, 2009 WL 400359, at *3 (N.D. Cal. Feb. 18, 2009). Accordingly, GEO's contract documents control and Plaintiffs' claims should be dismissed on the basis of derivative sovereign immunity.

2.   GEO was directed to provide for discipline for failure to clean.

Next, Plaintiffs argue that their trafficking claims should not be dismissed because their "claims exclude the requirements of the PBNDS that detained immigrants must keep their immediate living areas clean." ECF 49 at 10. But once again, Plaintiffs' arguments appear unrelated

---

Facilities in this case so they hold no precedential value.

[4] Plaintiffs' SAC concedes that ICE's PBNDS are valid and binding authority on the Facilities. *See* ECF No. 46 at ¶¶ 102,103.

[5] This point is critical as Plaintiffs only basis for claiming they were owed more than $1 per day is based upon the assumption that they were "employees" under California law. Absent this claim, they have no legal basis to argue they were entitled to anything other than the stipend the federal government provided them, regardless of whether they felt they deserved $2 or $20.

to the allegations in their SAC, which fail to allege *any tasks* fall outside of the scope of Federal and California trafficking laws. Rather, any complaint a detainee has about any cleaning they performed is fair game in the SAC. As alleged by Plaintiff Cardona-Hernandez, one basis for his claims arising under the TVPA (not the VWP)[6] was that he was instructed by GEO that if he "wanted to [sic] his living space to be cleaner, he should clean it himself." ECF 46 at ¶ 225. Thus, Plaintiffs' allegations are inconsistent with the concession in their Response that their allegations exclude claims regarding the cleaning of detainee's personal living spaces. Likewise, Plaintiffs cite to paragraph 87 of their SAC as an enumerated list of tasks that are excluded from their claims. Among those enumerated items is "keeping the floor free of debris." *Id.* But Plaintiff Figueroa specifically alleges that the basis for his claims against GEO is that he would sweep and mop within his dorm, i.e. keep it free from debris. ECF 46 at ¶ 236. This is alleged by other detainees as well. These allegations thus, fail to state a claim under Plaintiffs' concession that the cleaning of personal areas and performance of tasks in Section 5.8 of the PBNDS do not amount to a violation of the TVPA. And Plaintiffs do not point to other specific allegations that would sustain their claim. Accordingly, Plaintiffs' failure to contest that GEO is immune from claims arising out of detainees' refusal to clean their living areas or keeping the floors free of debris requires, at a minimum, a partial dismissal of their claims.

Plaintiffs also do not contest that ICE instructed GEO to warn detainees that the "refusing to clean assigned living area" (without limitation) could lead to up to 72 hours of segregation. *See* ECF 47-2 at 230, Exhibit A-229. Indeed, to survive dismissal based upon derivative sovereign immunity in this case, Plaintiffs must allege or point to specific sections of the incorporated documents that would show GEO was not directed and authorized by ICE to warn detainees of the

---

[6] Indeed, as set forth in GEO's motion, Plaintiffs' SAC fails to clearly articulate the specific facts for their trafficking claims. While each Plaintiff claims to have worked in the VWP, these claims are unrelated to the trafficking claims, which does not include VWP work. *Id* ¶ 230. Work in the VWP is the basis of Plaintiffs' employment claims, not their trafficking claims. *Id* ¶ 231, 232. But Plaintiffs' allegations as to the tasks detainees purportedly performed as part of their trafficking claims are not specifically articulated. None of the Plaintiffs allege what tasks they specifically performed outside of their VWP positions (outside of what they purport is permissible under the PBNDS) that would give rise to separate trafficking claims, unrelated to their employment claims. This lack of specificity in connection with Plaintiffs' concession that cleaning within the living areas may be permissible further counsels in favor of dismissal.

possible sanction of segregation if they failed to clean. Indeed, without this allegation, Plaintiffs' claim cannot survive as a trafficking claim under either Federal or California law. Both laws require an unlawful means of coercing labor, not simply underpaid or free work. However, each of the sanctions that Plaintiffs raise in their SAC come verbatim from ICE's PBNDS. *Compare* ECF No. 46 at ¶¶ 67-70 *with* ECF 47-2 at Exhibit A-228 (§ 3.1A). ICE required, through the PBNDS and the Contract, that GEO incorporate the disciplinary sanctions into its handbook—which would be given to detainees. *Id.* at A-221; Ex. B at B-46, B-47; ECF No. 46 at ¶ 66. Thus, when GEO disseminated information about the PBNDS disciplinary sanctions to detainees via its handbook, GEO was doing *exactly* what the government authorized and directed GEO to do. ECF 47-2 at Ex. A at A-221. Plaintiffs offer no contrary evidence or colorable allegation. Thus, dismissal is proper because GEO's cleaning sanctions were authorized and directed by the federal government.

### III. <u>INTERGOVERNMENTAL IMMUNITY BARS SUIT.</u>

Next, Plaintiffs' Response argues that GEO is not entitled to intergovernmental immunity because the California's minimum laws are neutral and generally applicable. But, not all generally applicable laws are permissible under the Supremacy Clause. As the Ninth Circuit's recent *en banc* decision explained, "[a]s part of its protection of federal operations from state control, the Supremacy Clause precludes states from dictating to the federal government who can perform federal work." *GEO Grp., Inc. v. Newsom*, 50 F.4th at 754. To that end, "while a state has greater power to apply neutral regulations to a federal contractor than a federal employee, interfering with the federal government's hiring decisions goes too far—regardless of whether the decision is to hire an employee or a private contractor." *Id.* at 757. This is exactly the type of impermissible interpretation of the minimum wage act that Plaintiffs seek in this case. Plaintiffs seek to convert California's minimum wage law (and by extension PAGA) from a standard requiring a certain wage to be paid to *bona fide employees* within the state, to a law that overrides the federal government's decision that detainees are not employees and thereby eliminates an important program within ICE detention centers or otherwise forces ICE to reclassify its relationship (and by extension GEO's) with those it detains. More simply, it would require ICE (or its contractor) to *hire* every detainee who performed cleaning tasks in his or her cell or dayroom. That interpretation would go "too far"

under *Newsom.*

The Ninth Circuit has explained that "when a state regulation of a contractor would control federal operations" such a law would impermissibly have the same effect as direct enforcement against the federal government. *GEO Grp., Inc. v. Newsom*, 50 F.4th at 760. Here, if California's minimum wage laws were applied to detainees who ICE does not classify as "employees," the effect would be that California would directly (and impermissibly) regulate the federal government. Indeed, if ICE were to implement the VWP in its own facility in California, the practical result would be that it would be required by California to "hire" detainees as employees in order to carry out its detention functions, which include keeping detainees busy and avoiding idleness. As the *Newsom* court explained, this type of direct regulation is not permitted under the Supremacy Clause and would amount to a violation of the direct regulation theory of intergovernmental immunity. Accordingly, Plaintiffs' request for this Court to broadly interpret California's minimum wage laws such that they would fundamentally change the relationship between federal detainer and detainee cannot be adopted without violating the Supremacy Clause. As such, Plaintiffs' claims should be dismissed.

## IV. PLAINTIFFS' CLAIMS ARE PREEMPTED.

Plaintiffs also argue that preemption principles should not be applied to bar their suit. More specifically, Plaintiffs' Response argues that Congress has not occupied the field of immigration detention. ECF 49 at page 14. Plaintiffs fail to provide any Ninth Circuit authority that would support their position. To the contrary, the Ninth Circuit has been clear that immigration is a field that has been historically occupied by Congress. *See Steinle v. City & Cnty. of San Francisco*, 919 F.3d 1154, 1165 (9th Cir. 2019) (federal government has "plenary or near plenary power over immigration issues."). Furthermore, the Ninth Circuit has explained that as here, where a statute allows a state to second-guess the discretion given to a federal agency, "interference with the discretion that federal law delegates to federal officials goes to the heart of obstacle preemption" *GEO Grp., Inc. v. Newsom*, 50 F.4th at 762.

When it comes to detainee allowances, Congress alone has the power to "specif[y] from time to time" the "rate" at which "payment of allowances" may be made to "aliens, while held in

1  custody under the immigration laws, for work performed," 8 U.S.C. § 1555. Congress has set the
2  rate, see Pub. L. No. 95-431, 92 Stat. 1021. Furthermore, Congress has considered and rejected the
3  idea that the allowance should be raised to minimum wage. *See* ECF 47-2 Exhibit D. For California
4  to require otherwise would run afoul of the long-standing principles of preemption, as it would
5  interfere with the federal government's ability to determine what rate of allowance in a detention
6  facility is permissible, not only to the Congressional budget but also from a safety and operational
7  standpoint of reducing conflicts in detention facilities. To require otherwise would be a significant
8  interference in the federal government's authority. If detainees could be unilaterally classified as
9  employees by a state, the state could fundamentally alter the relationship that detainees have with
10 the operators of the facility—without recourse. In the instant case, it would allow California to
11 recast the relationship between an officer and detainee to a co-employee relationship. The practical
12 result would be a conflict in authority, serious security issues, administration issues, and discord.
13 This would undoubtedly be the type of significant obstacle that preemption is intended to prevent.
14 Thus, Plaintiffs' strained interpretation of the minimum wage laws is preempted.

15 Likewise, the Secretary of Homeland Security was delegated the authority to arrange for
16 the detention of aliens by Congress. As a result ICE has set forth requirements for *all* federal
17 contractors that require a VWP that does not contemplate the "employment" of detainees nor the
18 payment of minimum wages. *See* ECF 47-2 (Exhibit A PBNDS §5.8). To allow state law to overrule
19 this discretion would likewise run afoul of obstacle preemption. Accordingly, Plaintiffs' claims
20 must be dismissed.

21 **V.    DETAINEES IN THE VWP ARE NOT EMPLOYEES.**

22 While the Court need not reach the issue of whether detainees are employees to resolve the
23 instant motion to dismiss (because Plaintiffs have failed to show that derivative sovereign
24 immunity, preemption, and intergovernmental immunity do not preclude their claims) Plaintiffs'
25 Response fails to establish that their claims should not be dismissed. Critically, Plaintiffs' Response
26 wholly ignores the large body of federal case law concluding that detainees who perform labor
27 inside the place they are detained are not "employees" for purposes of minimum wage. *See e.g.,*
28 *Ndambi v. CoreCivic, Inc.*, 990 F.3d 369, 375 (4th Cir. 2021); *Alvarado Guevara v. I.N.S.*, 902

F.2d 394, 395 (5th Cir. 1990); *Menocal v. GEO Grp., Inc.*, 113 F. Supp. 3d 1125, 1128 (D. Colo. 2015); *Gilbreath v. Cutter Biological, Inc.*, 931 F.2d 1320, 1325 (9th Cir. 1991) (detainees are not employees); *Matherly v. Andrews*, 859 F.3d 264, 278 (4th Cir. 2017) (same); *Sanders v. Hayden*, 544 F.3d 812, 814 (7th Cir. 2008) (same); *Miller v. Dukakis*, 961 F.2d 7, 9 (1st Cir. 1992) (same); *Tourscher v. McCullough*, 184 F.3d 236, 243 (3d Cir. 1999) (same); *Villarreal v. Woodham*, 113 F.3d 202, 207 (11th Cir. 1997) (same); *cf. Bennett v. Frank,* 395 F.3d 409, 409 (7th Cir. 2005) (same); *Bennett v. Clark Cty. Sch. Dist.*, 24 F.3d 244 (9th Cir. 1994) (same). Plaintiffs do not address a single case that has weighed in on whether the VWP is "employment." Nor do they address the cases making plain that not all work in civil detention can be considered employment. Indeed, if they did, Plaintiffs would have an uphill battle.

The Fourth Circuit found that detainees who participated in an ICE-VWP were not "employees" under New Mexico state law or federal law because they fell outside of the scope of individuals the law was intended to protect. *Ndambi v. CoreCivic, Inc.*, 990 F.3d at 375. Plaintiffs fail to address this highly persuasive case law. Likewise, Plaintiffs are silent about the the Ninth Circuit authority which held that that the FLSA's minimum-wage requirement did not apply to an inmate who "worked for a program established by the prison and operated under the direction of prison officials." *Morgan v. MacDonald*, 41 F.3d 1291, 1293 (9th Cir. 1994). To that end, Plaintiffs raise arguments before this Court that the detainees in this case are different than those in *Morgan*'s binding precedent. For this reason alone, their employment claims should be dismissed.

Additionally, Plaintiffs' argument that $1 would be considered minimum renumeration under *Talley* falls flat. First, Plaintiffs fail to address the case law cited in GEO's brief that a stipend of $2 per day is not minimum renumeration. *See Juino v. Livingston Parish Fire Dist. No. 5*, 717 F.3d 431, 439-440 (2013) ($2 per fire/emergency earned by a volunteer firefighter is not remuneration). Indeed, California's Department of Corrections pays detained inmates $2 per day to fight fires and does not classify those individuals as employees.[7] *Id.* In fact, "[i]n 2017, 650

---

[7] *See* Abigail Johnson Hess, *California Is Paying Inmates $1 an Hour to Fight Wildfires*, CNBC Careers (Nov. 12, 2018), *https://www.cnbc.com/2018/08/14/california-is-paying-inmates-1-an-hour-to-fight-wildfires.html; see also Conservation (Fire) Camps*, Cal. Dep't of Corrs. & Rehab., *https://www.cdcr.ca.gov/facility-locator/conservation-camps/.*

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

- 8 -    1:22-CV-00868-ADA-CDB
MOTION TO DISMISS SECOND AM. COMPL.

1   incarcerated individuals assisted in suppressing the Pocket, Tubbs, and Atlas Fires. . . . [i]n 2018,

2   close to 800 incarcerated individuals assisted with the Camp Fire in Butte County. . . . And, in 2019,

3   over 400 incarcerated individuals helped battle the Kincade Fire." *Gurrola v. Duncan*, 519 F. Supp.

4   3d 732, 736 (E.D. Cal. 2021), *aff'd*, No. 21-15414, 2022 WL 2072729 (9th Cir. June 9, 2022). These

5   facts are directly contrary to Plaintiffs' assertion that none of California detention facilities allow

6   detained persons to work significant shifts for little to no renumeration. As well as their argument

7   that $1 could be considered minimum renumeration for purposes of California's Labor Code. There

8   is no principled employment-law difference between the California detainees who fight fires and

9   GEO's detainees who help contribute to their communal living needs—other than the obvious

10  conclusion that firefighting is much more dangerous. Importantly, the firefighters demonstrate an

11  additional example of detained individuals in California earning sub-minimum wages and falling

12  outside of the scope of "employee" for purposes of minimum wage—refuting Plaintiffs' claim that

13  anyone who is ever "permitted" to work must be an employee. In short, there is no colorable basis

14  that ICE detainees paid $1 per day meet the minimum renumeration test, particularly in light of

15  California's own practices of paying similar rates to its detainees while excluding them from the

16  definition of "employee." Accordingly, because detainees who participate in the VWP cannot be

17  classified as "employees" under California's minimum wage laws, Plaintiffs' minimum wage and

18  PAGA claims must be dismissed.

### VI. THE TVPA DOES NOT PROVIDE A PRIVATE RIGHT OF ACTION FOR INJUNCTIVE RELIEF.

21          As set forth in GEO's moving papers, the TVPA does not provide for a private right of

22  action for injunctive relief. To the contrary, Section 1595(a) of the TVPA states that an individual

23  "*may recover damages* and reasonable attorney fees." 18 U.S.C. § 1595(a) (emphasis added) while

24  Section 1595A provides that "the *Attorney General* may bring a civil action in a district court of

25  the United States *seeking an order to enjoin such act*." 18 U.S.C § 1595A(a) (emphasis added).

26  Plaintiffs fail to identify a single case to the contrary. Nor do Plaintiffs offer a principled reason as

27  to why Congress provided the Attorney General and individual plaintiffs different recourses if it

28  intended for the provisions to be used interchangeably. The statute is clear: injunctive relief is

unavailable where suit is not brought by the Attorney General. Accordingly, Plaintiffs' claim for injunctive relief must be dismissed.

**VII.   CONCLUSION**

For the reasons stated above, and in GEO's motion to dismiss, Plaintiffs' SAC should be dismissed for lack of subject matter jurisdiction and failure to state a claim. Plaintiffs have failed to point to any allegations or documents incorporated into their SAC that would allow their claims to proceed past this initial state.

Dated: January 23, 2023            BURKE, WILLIAMS & SORENSEN, LLP

By: */s/ Susan E. Coleman*
         Susan E. Coleman

Attorneys for Defendant
THE GEO GROUP, INC.

Dated: January 23, 2023            THE GEO GROUP, INC.

By: */s/ Wayne Calabrese*
         Wayne Calabrese
         Joseph Negron

Attorneys for Defendant
THE GEO GROUP, INC.

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

- 10 -            1:22-CV-00868-ADA-CDB
MOTION TO DISMISS SECOND AM. COMPL.