GAY CROSTHWAIT GRUNFELD – 121944
ERNEST GALVAN – 196065
MICHAEL FREEDMAN – 262850
BEN HATTEM – 335232
ROSEN BIEN GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California 94105-1738
Telephone: (415) 433-6830
Facsimile: (415) 433-7104
Email: ggrunfeld@rbgg.com
egalvan@rbgg.com
mfreedman@rbgg.com
bhattem@rbgg.com

PRIYA ARVIND PATEL – 295602
TREVOR KOSMO – 329218
CENTRO LEGAL DE LA RAZA
3400 East 12th Street
Oakland, California 94601-3402
Telephone: (510) 437-1554
Email: ppatel@centrolegal.org
tkosmo@centrolegal.org

LISA V. KNOX – 279406
CALIFORNIA COLLABORATIVE
FOR IMMIGRANT JUSTICE
1999 Harrison Street, Suite 1800
Oakland, California 94612-4700
Telephone: (510) 230-6746
Email: lisa@ccijustice.org

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION

| | |
|---|---|
| JOSE RUBEN HERNANDEZ GOMEZ; SALESH PRASAD; GUILLERMO MEDINA REYES; EDGAR SANCHEZ; ADAN CASTILLO MERINO; IVAN OLIVA SIERRA; FIDEL GARCIA, ISAAC CARDONA HERNANDEZ, and PEDRO JESUS FIGUEROA PADILLA, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE GEO GROUP, INC.; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 1:22-CV-00868-ADA-CDB<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PARTIAL CLASS CERTIFICATION**<br><br>Judge: Hon. Ana de Alba<br>Magistrate: Hon. Christopher D. Baker<br><br>Trial Date: None Set |

## TABLE OF CONTENTS

Page

NOTICE OF MOTION ..... 1
MEMORANDUM OF POINTS AND AUTHORITIES ..... 1
INTRODUCTION ..... 1
I. Statement of Facts ..... 2
II. Legal Standard ..... 5
III. The California Wage And Hour Class Meets the Requirements of Rule 23 ..... 5
A. The Class Is So Numerous That Joinder Is Impracticable ..... 6
B. Common Questions of Law and Fact Exist and Will Drive the Resolution of the Class's Claims ..... 7
1. Whether the Supremacy Clause Bars the Application of California's Minimum Wage Law to GEO ..... 8
2. Whether GEO Controls the Wages, Hours, and Working Conditions of Detained Workers in Its VWPs ..... 9
3. Whether GEO Knows That Detained People Work in Its Facilities for $1 Per Day ..... 10
4. Whether GEO Exercises Control or Direction Over the Labor of Detained Workers in Its VWPs ..... 10
5. Whether the Work of Detained Workers in GEO's VWPs Is Outside the Usual Course of GEO's Business ..... 11
6. Whether GEO Has the Authority to Fire Detained Workers at Will ..... 11
7. Whether Detained Workers in GEO's VWPs Are Volunteers ..... 12
C. The Claims of the Class Representatives Are Typical ..... 12
D. The Class Representatives and Class Counsel Are Adequate ..... 13
E. Common Questions Predominate Over Any Individual Questions ..... 14
F. Class Litigation Is Superior to Any Other Means of Resolving Plaintiffs' Claims ..... 16
CONCLUSION ..... 17

# TABLE OF AUTHORITIES

**Page**

**CASES**


*A.B. v. Haw. State Dep't of Educ.*,
30 F.4th 828 (9th Cir. 2022) .......... 6

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) .......... 13

*Ayala v. Antelope Valley Newspapers, Inc.*,
59 Cal. 4th 522 (2014) .......... 11

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013) .......... 15

*Cortez v. Purolator Air Filtration Prods. Co.*,
23 Cal. 4th 163 (2000) .......... 5

*Dynamex Operations W. v. Superior Court*,
4 Cal. 5th 903 (2018) .......... 10, 11

*E. Tex. Motor Freight Sys. Inc. v. Rodriguez*,
431 U.S. 395 (1977) .......... 13

*Educ. & Enf't Ctr. v. Hosp. Props. Tr.*,
867 F.3d 1093 (9th Cir. 2017) .......... 5

*Gonzalez v. U.S. Immigr. & Customs Enf't*,
975 F.3d 788 (9th Cir. 2020) .......... 12

*Hanlon v. Chrysler Corp.*,
150 F.3 1011 (9th Cir. 1998) .......... 12

*Hilario v. Allstate Ins. Co.*,
--- F. Supp. 3d. ----, 2022 WL 17170148 (N.D. Cal. Nov. 22, 2022) .......... 6

*In re Hyundai and Kia Fuel Econ. Litig.*,
926 F.3d 539, 557 (9th Cir. 2019) .......... 14

*Jimenez v. Allstate Ins. Co.*,
765 F.3d 1161 (9th Cir. 2014) .......... 17

*Just Film, Inc. v. Buono*,
847 F.3d 1108 (9th Cir. 2017) .......... 15

*Leyva v. Medline Indus. Inc.*,
716 F.3d 510 (9th Cir. 2013) .......... 15, 16

*Martinez v. Combs*,
49 Cal. 4th 35 (2010) .......... 9, 10, 11

*Owino v. CoreCivic, Inc.*, 60 F.4th 437 (2022) .......... 8, 9, 15

*Parsons v. Ryan*, 754 F.3d 657 (9th Cir. 2014) .......... 13

*Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979 (9th Cir. 2015) .......... 15

*Ridgeway v. Walmart Inc.*, 946 F.3d 1066 (9th Cir. 2020) .......... 16

*Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125 (9th Cir. 2016) .......... 14

*Talley v. County of Fresno*, 51 Cal. App. 5th 1060 (2020) .......... 12

*Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442 (2016) .......... 7, 14, 15

*United States v. Rosenwasser*, 323 U.S. 360 (1945) .......... 10

*Vaquero v. Ashley Furniture Indus., Inc.*, 824 F.3d 1150 (9th Cir. 2016) .......... 15

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) .......... 7, 8, 10

**STATUTES**

Cal. Bus. & Prof. Code § 17200 .......... 5

Cal. Lab. Code § 226 .......... 16

**RULES**

Fed R. Civ. P. 23(a) .......... passim

Fed R. Civ. P. 23(b) .......... 2, 6, 14, 16

Fed. R. Civ. P. 23(g) .......... 14

**OTHER AUTHORITIES**

Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1778 (3d ed. 2005) .......... 14

Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U.L. Rev. 97, 131-32 (2009)........................................................................ 7

William B. Rubenstein, *Newberg on Class Actions* § 4:50 (5th ed. 2012)............................................... 7, 14

## NOTICE OF MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on June 22, 2023, at 10:30 a.m., or as soon thereafter as the matter may be heard, before the Honorable Christopher D. Baker in the Bakersfield courthouse for the Eastern District of California, Plaintiffs will and hereby do move the Court for an order granting certification of the California Wage and Hour Class pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(3).

This motion is based on the accompanying Memorandum of Points and Authorities, the Declarations in Support of Plaintiffs' Motion for Partial Class Certification and Motion for Summary Adjudication filed concurrently herewith, the documents attached thereto, and the entire record in this matter.

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Defendant The GEO Group, Inc. ("GEO") admits that it pays all detained immigrants employed in its Voluntary Work Programs ("VWPs") at the Mesa Verde and Golden State Annex facilities $1 per day for their work—far below California's minimum wage. The California Wage and Hour Class proposed in this motion consists of detained immigrants who worked in the VWP at either Mesa Verde or Golden State Annex from July 13, 2018 to the date of final judgment in this matter. Per GEO's acknowledged policies, confirmed by the employment records and declarations of representative class members, each member of the California Wage and Hour Class was paid $1 per day for the labor they performed in GEO's VWPs.

For that reason, the only question that must be answered to determine liability on the California Wage and Hour Class's claims is whether detained immigrants working in GEO's VWPs are GEO's employees for purposes of the California Labor Code and therefore subject to the Code's minimum wage provisions. That question is common to each member of the class and is the predominant inquiry that will decide whether GEO is liable on each class member's claims. The answer to that question depends entirely on

class-wide proof and class-wide legal issues. It can and should be adjudicated on a class-wide basis.

In addition, the members of the California Wage and Hour Class are too numerous for joinder of their claims to be feasible, and they are readily identifiable from GEO's payment records. The claims of the named class representatives are typical of the claims of their fellow class members, and both they and their counsel will adequately protect the interests of the class. The Court should certify the following California Wage and Hour Class under Federal Rule of Civil Procedure 23(b)(3):

*All persons who (1) were detained at the Mesa Verde or Golden State Annex facilities at any time between July 13, 2018 and the date of final judgment in this matter and (2) participated in GEO's Voluntary Work Program at any point during their detention at Mesa Verde or Golden State Annex.*

## I. Statement of Facts

Detained immigrants who arrive at GEO's Mesa Verde and Golden State Annex facilities receive a copy of the facility's handbook. *See* Mot. to Dismiss at 17, ECF No. 47 (Jan. 6, 2023).[1] This handbook explains the terms of the facility's Voluntary Work Program that apply to all immigrants who participate in the program.[2] For instance, the handbooks of both the Mesa Verde and Golden State Annex facilities inform detained

[1] Citations to documents filed in this case refer to ECF page numbers.

[2] Although Immigration and Customs Enforcement refers to these programs as Voluntary Work Programs, the current versions of the Mesa Verde and Golden State Annex handbooks refer to them as a "Voluntary Activities Program" or "Voluntary Facility Activities Program." Decl. of Ben Hattem in Supp. Pls.' Mot. for Partial Class Certification & Pls.' Mot. for Summ. Adjudication, Ex. B at 21; *id.*, Ex. C at 22. From records of Plaintiffs' work applications, it appears GEO adopted these names for the Mesa Verde and Golden State Annex programs in late 2021 or early 2022, while several lawsuits raising claims similar to this one with regard to GEO's other facilities were pending. *Compare id.*, Ex. E at 1 *and id.*, Ex. G at 1 *with id.*, Ex. F at 5 *and id.*, Ex. H at 2. In this motion, Plaintiffs refer to the work programs at Mesa Verde and Golden State Annex as Voluntary Work Programs or VWPs when referencing facts that occurred both before and after this name change.

immigrants that if they participate in the facility's VWP, they "will receive a daily allowance of $1 per day." Decl. of Ben Hattem in Supp. Pls.' Mot. for Partial Class Certification & Pls.' Mot. for Summ. Adjudication ("Hattem Decl."), Ex. B at 21 (Mesa Verde Handbook); *id.*, Ex. C at 23 (Golden State Annex Handbook). This payment will be made to the detained worker "for any and all hours completed during the day," and the handbooks instruct that the payment "shall be credited to the detainee's account on a daily basis." *Id.*, Ex. B at 21; *id.*, Ex. C at 23. The Golden State Annex handbook additionally indicates that detained workers may only receive up to a "[t]otal of $5.00 per week for working." *Id.*, Ex. C at 23.

The handbooks further inform detained immigrants of the kinds of jobs available in each facility's VWP. At Golden State Annex, detained immigrants may receive job placements "such as Food Service Worker, Dining Hall Worker, Laundry Worker, Sanitation Worker, Dorm Porter, and Haircutter[,] and General Services Worker." *Id.* at 22. At Mesa Verde, the assignments are similar—they are jobs "such as Food Service Helper, Dining Hall Cleaning, Laundry Assistant, Sanitation Cleaning, Dorm Porter, and Haircutter." *Id.*, Ex. B at 21. Plaintiffs' work program applications from Golden State Annex confirm that these jobs and others like them are the VWP positions available to detained workers at that facility. *See id.*, Ex. E at 1, 5 (Fidel Garcia VWP applications). The same is true at Mesa Verde. *See id.*, Ex. F at 5 (Pedro Figueroa Padilla VWP application).

Detained immigrants are also informed that they must complete any training required by GEO, "[f]ollow the schedule assigned" by GEO, and "[p]erform the assignment satisfactorily" in order to keep their jobs in the VWP. *Id.*, Ex. B at 21; *id.*, Ex. C at 23. They are told that they "will receive an orientation and safety training" for their work assignment. *Id.*, Ex. B at 21; *id.*, Ex. C at 23. The agreement that detained workers sign when they are hired into the VWPs at Mesa Verde and Golden State Annex makes clear that they must "report directly to their job assignment on time" and "remain on their job assignment . . . until their work assignment is completed." *Id.*, Ex. G at 2

(Salesh Prasad Sept. 2021 VWP Application). The agreement further states that "[w]ork detail members who fail to perform to the job's expectations will be terminated from their job assignment" and that "[a]ll work detail members serve at the pleasure of the facility and may be removed from their work status without prior notice of justification." *Id.*; *see also id.*, Ex. E at 1, 5; *id.*, Ex. H at 1; *id.*, Ex. F at 5. These agreements also confirm that detained workers in the VWPs are paid $1 per day for their labor. *See, e.g.*, *id.*, Ex. E at 5 ("Work detail members will receive $1.00 per work day. The maximum paid out will be $1.00 per day. . . . Failure to sign the [pay] sheet may result in not getting paid for the day.").

The declarations and records of detained immigrants who have participated in the VWPs at Mesa Verde and Golden State Annex reflect that these uniform policies in fact apply to detained workers in the VWPs. Transaction records for Plaintiffs' commissary accounts, for example, show that GEO paid them $1 per day for their work in the VWPs. *See, e.g.*, *id.*, Ex. J at 2-34 (Isaac Cardona Hernandez Resident Transaction Record); *id.*, Ex. I at 1-17 (Fidel Garcia Resident Transaction Record). These records also reflect that detained workers at the Mesa Verde and Golden State Annex are on GEO's payroll at those facilities with a pay rate of $1 per day. *See, e.g.*, *id.*, Ex. J at 2. The declarations of members of the putative class similarly show that GEO uniformly paid detained workers less than minimum wage. *See, e.g.*, Decl. of Adrian Esteban Lopez at 3; Decl. of Armando Gil Tzun at 2; Decl. of Guillermo Medina Reyes at 4.[3]

The work program records of VWP participants further show that GEO's stated policies of training and providing equipment to detained workers in the Mesa Verde and Golden State Annex VWPs are borne out in practice, and that detained workers receive job performance evaluations for their work in the VWPs. *See, e.g.*, Hattem Decl., Ex. E at 4, 6. Finally, declarations of people who have participated in GEO's VWPs at Mesa Verde and Golden State Annex indicate that the level of oversight and control described in

[3] The California Wage and Hour Class members' declarations cited herein are attached to Plaintiffs' concurrently filed Index to Class Member Declarations.

the handbooks and work agreements—including GEO's ability to fire detained workers for unsatisfactory performance or for any other reason—is not just GEO's acknowledged policy, but the uniform practice at the facilities as well. *See, e.g.*, Decl. of Edgar Alvarez Rodriguez at 3; Decl. of Isaac Cardona Hernandez at 3; Decl. of Ivan Oliva Sierra at 4.

## II. Legal Standard

Under Federal Rule of Civil Procedure 23(a), "[a] party seeking class certification must demonstrate that (1) 'joinder of all members is impracticable,' (2) 'there are questions of law or fact common to the class,' (3) the named plaintiffs' claims or defenses are typical of those of the class, and (4) 'the representative parties will fairly and adequately protect the interests of the class.'" *C.R. Educ. & Enf't Ctr. v. Hosp. Props. Tr.*, 867 F.3d 1093, 1103 (9th Cir. 2017) (quoting Fed. R. Civ. P. 23(a)). In addition, the proposed class must satisfy one of the requirements of Rule 23(b). Plaintiffs seek to certify the California Wage and Hour Class under Rule 23(b)(3), which requires that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

## III. The California Wage And Hour Class Meets the Requirements of Rule 23

The California Wage and Hour Class consists of all people who have been detained at the Mesa Verde or Golden State Annex facilities since July 13, 2018, and who have participated in either facility's VWP at any point during that period. This class brings claims for violations of the California Labor Code's minimum wage provisions and for violations of California's Unfair Competition Law ("UCL"), which prohibits any "unlawful . . . business act or practice," including violations of the Labor Code's wage provisions. Cal. Bus. & Prof. Code § 17200; *Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal. 4th 163, 178 (2000); *see also* Pls.' Mot. for Summ. Adjudication at 16-17, filed concurrently herewith. Every member of this class has been subject to the same basic policies on which their claims depend: They have worked in GEO's facilities on GEO's behalf, doing jobs with the degree of oversight and control that made them GEO's employees for purposes of the Labor Code,

and they have been paid $1 per day for their labor. This class meets all of the requirements of Rule 23(a) and (b)(3), and it should be certified.

**A. The Class Is So Numerous That Joinder Is Impracticable**

Rule 23(a)(1) requires a proposed class to be sufficiently numerous "that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). This rule "requires examination of the specific facts of each case and imposes no absolute limitations." *A.B. v. Haw. State Dep't of Educ.*, 30 F.4th 828, 835 (9th Cir. 2022) (quoting *Gen. Tel. Co. of the Nw. v. EEOC*, 446 U.S. 318, 330 (1980)). "However, courts within the Ninth Circuit generally agree that numerosity is satisfied if the class includes forty or more members." *Hilario v. Allstate Ins. Co.*, --- F. Supp. 3d. ----, 2022 WL 17170148, at *5 (N.D. Cal. Nov. 22, 2022).

The proposed California Wage and Hour Class meets the numerosity requirement. The declarations of class members indicate that, at any given time during their detention at the Mesa Verde and Golden State Annex facilities, there were typically seven to ten detained people working in GEO's VWPs in each dorm. *See, e.g.*, Decl. of Edgar Alvarez Rodriguez at 2; Decl. of Armando Gil Tzun at 2. GEO also employed other detained immigrants as barbers, kitchen, laundry, and dining hall workers, so-called "Detainee Aids" who assisted other detained people with tasks of daily living, and workers assigned to clean the facilities' bathrooms. *See, e.g.*, Decl. of Ivan Oliva Sierra at 2-4 (discussing work as barber and "Detainee Aid"); Decl. of Mohamed Mousa at 3 (explaining that before the onset of COVID-19, "there were usually 6 or 7 kitchen workers at any time, as well as 6 or 7 workers in the laundry, 4 people working in the chow hall, 12 people cleaning bathrooms, and 1 person per dorm working in the barbershop").

There are eight dorms in the Golden State Annex facility and four at Mesa Verde, although only three are currently in use. *See, e.g.*, Decl. of Edgar Alvarez Rodriguez at 2; Decl. of Adrian Esteban Lopez at 3. Moreover, many more detained people have worked in GEO's VWPs at Mesa Verde and Golden State Annex throughout the period covered by the proposed class definition than worked there at any given time because of the frequent turnover of detained immigrants in GEO's custody. *See, e.g.*, Decl. of Adrian Esteban

Lopez at 3; Decl. of Sergio Marez Gallegos at 3. Some members of the putative class report personally working alongside groups of detained workers that would be sufficiently numerous to satisfy the numerosity requirement even if they were the only members of the class. *See, e.g.*, Decl. of Salesh Prasad at 3 ("Overall, I worked with about 40 porters throughout the time I worked as a porter at Golden State Annex."); Decl. of Edgar Alvarez Rodriguez at 2 (". . . I worked with about 35 Dorm Porters . . . ."). The proposed class easily meets the numerosity threshold for certification.

### B. Common Questions of Law and Fact Exist and Will Drive the Resolution of the Class's Claims

Rule 23(a)(2) requires a party seeking class certification to show that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). To satisfy this requirement, a putative class of plaintiffs must show that their claims "depend upon a common contention . . . [that] is capable of classwide resolution." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). In other words, "[w]hat matters to class certification . . . is not the raising of common 'questions'—even in droves—but rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U.L. Rev. 97, 131-32 (2009)). A question is common to the class where "the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (quoting 2 William B. Rubenstein, *Newberg on Class Actions* § 4:50 (5th ed. 2012)).

One method for demonstrating that the claims of a putative class rest on common contentions is to present "[s]ignificant proof" that the injuries of which the class complains resulted from a "general policy" of the defendant. *Wal-Mart Stores*, 564 U.S. at 353. This proof can be established by "the text of . . . corporate policies," especially when accompanied by testimony or other statements "in line with the policies" that indicate the policies apply in practice. *Owino v. CoreCivic, Inc.*, 60 F.4th 437, 444 (2022).

"Commonality is necessarily established where there is a class-wide policy to which all class members are subjected." *Id.*

The claims of the California Wage and Hour Class rest on GEO's general policies applicable to all class members. These include GEO's policies of hiring detained people to work in its facilities under the VWPs; assigning them jobs essential to the operation and maintenance of GEO's facilities; prescribing where, when, and how they must do their work; providing the training and equipment they need to do their assigned jobs; retaining the power to discipline or fire them if they do not do their jobs to GEO's standards; and paying them $1 per day for their labor. The case involves only two GEO facilities, Mesa Verde and Golden State Annex. The Plaintiff class housed in these two facilities is subject to uniform VWP policies. Plaintiffs' contentions about these policies raise an array of common questions, the common answers to which will determine "in one stroke" whether GEO is liable to every class member for failing to pay them California's minimum wage. *Wal-Mart Stores*, 564 U.S. at 350. Some of these questions are as follows.

**1. Whether the Supremacy Clause Bars the Application of California's Minimum Wage Law to GEO**

GEO has argued that derivative sovereign immunity, intergovernmental immunity, and preemption exempt it from California's minimum wage law. *See, e.g.*, Mot. to Dismiss at 12-22, ECF No. 47 (Jan. 6, 2023). Its claim rests on arguments about GEO's contract with ICE and purported conflicts between the California Labor Code and federal immigration law. *See id.* at 15-16, 18-20. Plaintiffs have responded that ICE allows GEO to pay more than $1 per day and that the California Labor Code does not conflict with the laws GEO identifies. *See* Opp'n to Mot. to Dismiss at 8-16, ECF No. 49 (Jan. 13, 2023). Whether GEO is correct that the Supremacy Clause insulates it from liability raises questions of law (such as whether a statute authorizing the use of ICE appropriations to pay detained workers conflicts with California's minimum wage law) and fact (such as whether ICE's Performance-Based National Detention Standards require GEO to pay detained workers exactly $1 per day) that are threshold questions for the minimum wage

claims of every member of the California Wage and Hour Class. The evidence that will answer these questions is not individualized; the questions turn on statutes, contracts, and the testimony of GEO's representatives that apply identically to all California Wage and Hour Class members.

**2. Whether GEO Controls the Wages, Hours, and Working Conditions of Detained Workers in Its VWPs**

One way that Plaintiffs can show they are GEO's employees under the standard applicable to California's minimum wage laws is to demonstrate that GEO "exercise[d] control over the[ir] wages, hours or working conditions." *Martinez v. Combs*, 49 Cal. 4th 35, 64 (2010). The question of whether GEO did so is common to every member of the California Wage and Hour class. And that question is susceptible to common proof. For example, GEO's control of Plaintiffs' wages will be shown by proof that GEO had the power to set their wages higher than $1 per day, which turns on aspects of GEO's relationship with ICE that do not vary from Plaintiff to Plaintiff. *See* Pls.' Mot. for Summ. Adjudication at 4-6. Similarly, Plaintiffs' common contention that GEO controlled their working hours rests on the uniform policies set forth in the Mesa Verde and Golden State Annex handbooks, as well as the uniform requirements for the VWP laid out in GEO's VWP application forms and confirmed by the uniform declarations of California Wage and Hour Class members "in line with the policies." *Owino*, 60 F.4th at 444. That GEO controlled Plaintiffs' working conditions will likewise be shown by policies described in the facilities' handbooks and confirmed by the uniform statements and records of class members. These include GEO's policies that detained workers must pass a screening test, complete trainings, and follow a dress code; GEO's uniform policy of paying detained workers by crediting their commissary accounts; GEO's provision of the safety equipment and other materials that it requires detained workers to use; and GEO's policy requiring periodic performance evaluations of detained workers. *See* Pls.' Mot. for Summ. Adjudication at 6-7.

**3. Whether GEO Knows That Detained People Work in Its Facilities for $1 Per Day**

Plaintiffs can also show that they were GEO's employees by proving that GEO "suffer[ed] or permit[ted]" them to work in its facilities for subminimum wages. *Martinez*, 49 Cal. 4th at 64. This is "'the broadest definition' that has been devised for extending the coverage of a statute or regulation to the widest class of workers that reasonably fall within the reach of a social welfare statute." *Dynamex Operations W. v. Superior Court*, 4 Cal. 5th 903, 951 (2018) (quoting *United States v. Rosenwasser*, 323 U.S. 360, 363 n.3 (1945)). It is satisfied by proof that a defendant "knows that persons are working in his or her business without having been formally hired, or while being paid less than the minimum wage." *Martinez*, 49 Cal. 4th at 69.

Again, Plaintiffs will show by evidence applicable to all of their claims that GEO knows detained people work in its VWPs for less than minimum wage. This evidence includes GEO's acknowledgement in filings before this Court that it pays VWP workers at Mesa Verde and Golden State Annex $1 per day. *See* Mot. to Dismiss at 16, ECF No. 47 (Jan. 6, 2023). The Mesa Verde and Golden State Annex handbooks confirm this policy. Hattem Decl., Ex. B at 21; *id.*, Ex. C at 23. And the payment records, application materials, and declarations of class members uniformly indicate that this policy applied in practice too. *See id.*, Ex. K at 1-32; *id.*, Ex. J at 2-34; *id.*, Ex. I at 1-17; *id.*, Ex. H at 1; *id.*, Ex. F at 5; *id.*, Ex. E at 5; *see also, e.g.*, Decl. of Francisco Ramirez at 3; Decl. of Jose Hernandez Gomez at 3; Decl. of Fidel Garcia at 3. This is "[s]ignificant proof" of GEO's "general policy" of hiring detained people at Mesa Verde and Golden State Annex into its VWPs at those facilities and paying them $1 per day for their work. *Wal-Mart Stores*, 564 U.S. at 353.

**4. Whether GEO Exercises Control or Direction Over the Labor of Detained Workers in Its VWPs**

The California Supreme Court has explained that the "suffer or permit" standard makes workers the employees of the entity for which they work unless the putative

employer establishes three things, including "that the worker is free from the control and direction of the hiring entity in connection with the performance of the work, both under the contract for the performance of the work and in fact." *Dynamex*, 4 Cal. 5th at 964. The common proof discussed above regarding GEO's control over Plaintiffs' working conditions will also make clear that GEO cannot meet this requirement.

**5. Whether the Work of Detained Workers in GEO's VWPs Is Outside the Usual Course of GEO's Business**

Another requirement that GEO must satisfy to prove that it is not Plaintiffs' employer under the "suffer or permit" standard is "that the worker performs work that is outside the usual course of the hiring entity's business." *Id.* GEO's core business is to operate and maintain detention facilities. The main VWP assignment—cleaning of such facilities—is within the usual course of that business. The types of work that GEO hires detained people to perform in its VWPs at Mesa Verde and Golden State Annex are set forth in the facility handbooks and confirmed by class members' VWP application materials. *See* Hattem Decl., Ex. C at 22; *id.*, Ex. B at 21; *id.*, Ex. E at 1, 5; *id.*, Ex. F at 5. Along with the uniform declarations of class members that GEO did not hire enough staff to operate and maintain its facilities without the labor performed by VWP workers, these documents will show that members of the California Wage and Hour Class uniformly did jobs for GEO that were within the usual course of GEO's business.

**6. Whether GEO Has the Authority to Fire Detained Workers at Will**

Plaintiffs can also show that GEO was their employer by showing that they had an employer-employee relationship with GEO under common law standards. *See Martinez*, 49 Cal. 4th at 64. The strongest evidence of a common law employment relationship is that the putative employer has the right to fire the worker at will. *See Ayala v. Antelope Valley Newspapers, Inc.*, 59 Cal. 4th 522, 531 (2014). Plaintiffs will show that GEO retained the right to fire them at will as a matter of policy. They will present evidence of this policy's inclusion in the materials GEO provides to detained immigrants and

confirmation of the policy in the VWP application documents and declarations of class members. *See* Pls.' Mot. for Summ. Adjudication at 10. This is significant proof of a general policy under which GEO reserved the right to fire at will every member of the California Wage and Hour Class.

#### 7. Whether Detained Workers in GEO's VWPs Are Volunteers

Finally, GEO has argued that detained workers in its VWPs are volunteers who donate their labor to improving GEO's facilities rather than employees who work for GEO in exchange for money. *See* Mot. to Dismiss at 24-25, ECF No. 47 (Jan. 6, 2023). As discussed in Plaintiffs' concurrently filed motion for summary adjudication on their minimum wage claim, whether detained workers are volunteers depends on whether the "threshold-remuneration test" that applies to California's Fair Employment and Housing Act should be grafted onto the California Labor Code's minimum wage provisions, *see* *Talley v. County of Fresno*, 51 Cal. App. 5th 1060, 1080 (2020); whether, if so, work in the VWPs for $1 per day is labor "performed for a wage or salary," *id.*; whether, if it is, Plaintiffs must additionally show that they received remuneration "of a quantifiable, financial nature that is significant and not merely incidental to the work activities performed," *id.* at 1084; and whether, if they must, the $1 per day wage they received meets that threshold. *See* Pls.' Mot. for Summ. Adjudication at 12-16. These are common questions of law applicable to the claims of every member of the California Wage and Hour Class, and the facts and law that will answer these questions do not vary among different members of the class.

### C. The Claims of the Class Representatives Are Typical

To satisfy the typicality requirement of Rule 23(a)(3), "[t]he claims of the representative party must be typical of the class claims." *Gonzalez v. U.S. Immigr. & Customs Enf't*, 975 F.3d 788, 809 (9th Cir. 2020). This standard "is 'permissive' and requires nothing more than that a class plaintiff's claims be 'reasonably coextensive with those of absent class members.'" *Id.* (quoting *Hanlon v. Chrysler Corp.*, 150 F.3 1011, 1020 (9th Cir. 1998)). "The test of typicality is 'whether other members have the same or

similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014) (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)).

The claims of the class representatives in this case are no different from the claims of the absent class members. Each of the class representatives was hired by GEO into its VWP at either Mesa Verde or Golden State Annex, and each was subject to the same class-wide policies that form the basis of the class's claims. For instance, like the absent class members, each of the class representatives performed work that was important to the operation and maintenance of GEO's facilities; each was subject to GEO's control with regard to how, where, and when to do their jobs; each could be fired if they did not perform to GEO's satisfaction; and each was paid $1 per day for their labor. *See, e.g.*, Decl. of Guillermo Medina Reyes at 4-7; Decl. of Pedro Figueroa Padilla at 3-6; Decl. of Jose Hernandez Gomez at 3-5. All of their claims arise from the same GEO policies and are based on the same legal theories as the claims of the absent class members, and the harm they suffered is the same as the harm suffered by the absent class members.

**D. The Class Representatives and Class Counsel Are Adequate**

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This rule "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). To satisfy Rule 23(a)(4), a class representative "must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *Id.* at 625-26 (quoting *E. Tex. Motor Freight Sys. Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977)).

The class representatives will adequately protect the interests of the class for the same reasons why their claims are typical of the class's claims. They assert the same theory of liability as the absent class members based on the same GEO policies, and they accordingly suffered an injury identical to that of the absent class members and have an

identical interest in vigorously prosecuting their claims. The proposed class representatives have knowledge of the case and of their duties as class representatives, and they have affirmed their willingness to carry out their duties. *See, e.g.*, Decl. of Jose Hernandez Gomez at 6; Decl. of Ivan Oliva Sierra at 5-6; Decl. of Fidel Garcia at 6.

Class counsel is adequate to protect the class's interests as well, as required by Rule 23(g). *See* Fed. R. Civ. P. 23(g)(4). Class counsel has extensive experience with class action litigation generally and class actions involving California labor law in particular. Decl. of Ernest Galvan, ¶¶ 5-8. Class counsel also has substantial experience representing detained immigrants and knowledge of conditions in GEO's facilities. Decl. of Lisa Knox, ¶¶ 2-4. Counsel for the California Wage and Hour Class is committed to expending the resources necessary to pursue the class's claims. *Id.*, ¶ 6; Decl. of Ernest Galvan, ¶¶ 9-10.

### E. Common Questions Predominate Over Any Individual Questions

For a class to be properly certified under Rule 23(b)(3), a court must find that "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). This requirement "asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods*, 577 U.S. at 453 (quoting Rubenstein, *supra*, § 4:49). If "one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately." *Id.* (quoting 7 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1778 (3d ed. 2005)). "[M]ore important questions apt to drive the resolution of the litigation are given more weight in the predominance analysis," and a class may be certified under Rule 23(b)(3) "even if just one common question predominates." *In re Hyundai and Kia Fuel Econ. Litig.*, 926 F.3d 539, 557 (9th Cir. 2019) (quoting *Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1134 (9th Cir. 2016)).

The central issue for the California Wage and Hour Class's claims is whether GEO's acknowledged policy of paying detained workers in its Mesa Verde and Golden

State Annex VWPs $1 per day for their work violates the California Labor Code. This issue is "appropriate for class-wide resolution" because its disposition depends on the legal ramifications of GEO's uniform policies: Either GEO's "policies and practices violated the law and the rights of the class members, or they didn't." *Owino*, 60 F.4th at 445.

Any individualized questions about the class's claims are insignificant by comparison. For instance, different members of the class worked in GEO's VWPs for different lengths of time and will accordingly be due different amounts of compensation if the court finds that GEO's policy of paying them $1 per day violated California's minimum wage law. But "damage calculations alone cannot defeat class certification." *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 987 (9th Cir. 2015). Indeed, "damages determinations are individual in nearly all wage-and-hour class actions." *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 513 (9th Cir. 2013). While Plaintiffs must be able to show that their "damages are capable of measurement on a classwide basis," *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013), this requires only a showing that "the whole class suffered damages traceable to the same injurious course of conduct underlying the plaintiffs' legal theory," *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1120 (9th Cir. 2017).

That is the case here. Although Plaintiffs worked different amounts of time for GEO for subminimum wages, each of their damages stems from GEO's uniform decision to pay them less than minimum wage for their labor. This alone is enough under Ninth Circuit precedent to allow their claims to move forward as a class action. *Vaquero v. Ashley Furniture Indus., Inc.*, 824 F.3d 1150, 1154-55 (9th Cir. 2016).

Moreover, to meet the predominance requirement, Plaintiffs "d[o] no need to present a fully formed damages model 'when discovery [i]s not yet complete and pertinent records may [be] still within Defendant's control.'" *Owino*, 60 F.4th at 447. If discovery reveals that GEO did not document the hours Plaintiffs worked for subminimum wages in its VWPs, Plaintiffs may use testimony and other records to "introduce a representative sample to fill an evidentiary gap created by the employer's failure to keep adequate records." *Tyson Foods*, 577 U.S. at 456. Many detained workers were required to sign

time sheets showing the hours they worked on particular days. *See, e.g.*, Decl. of Salesh Prasad at 5; Decl. of Isaac Cardona Hernandez at 3-4; Decl. of Edgar Alvarez Rodriguez at 4. Any difficulty in calculating damages due to GEO's failure to keep records, in violation of Section 226(a) of the California Labor Code, should not impair Plaintiffs' ability to proceed as a class. In any event, at the certification stage, the law of the Ninth Circuit is clear: "[T]he need for individual damages calculations does not doom a class action." *Ridgeway v. Walmart Inc.*, 946 F.3d 1066, 1086 (9th Cir. 2020).

### F. Class Litigation Is Superior to Any Other Means of Resolving Plaintiffs' Claims

Rule 23(b)(3) also requires that class litigation must be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Courts look to four factors to decide whether a proposed class meets this requirement: "the class members' interests in individually controlling" their claims, "the extent and nature of any litigation concerning the controversy already begun by or against class members," "the desirability or undesirability of concentrating the litigation of the claims in the particular forum," and "the likely difficulties in managing a class action." *Id.*; *see also Leyva*, 716 F.3d at 514-16 (discussing these factors).

Each of the four superiority factors points to class litigation as the superior means of resolving Plaintiffs' claims. There is no indication that members of the California Wage and Hour Class have an interest in bringing their claims individually, since the cost of litigating individual actions would be prohibitively high. Plaintiffs are unaware of any other pending lawsuit that claims GEO's VWPs at the Mesa Verde and Golden State Annex facilities violate California's minimum wage laws. Concentrating the litigation in this forum will conserve substantial judicial resources by allowing the common issues that will resolve each class member's claim to be determined in a single adjudication. And there are no significant manageability concerns—as discussed above, liability can be established by common proof, and the Ninth Circuit has held that differences in damages among class members do not defeat class certification. *See Jimenez v. Allstate Ins. Co.*,

765 F.3d 1161, 1167 (9th Cir. 2014).

**CONCLUSION**

For the foregoing reasons, the Court should certify the California Wage and Hour Class consisting of all persons who (1) were detained at the Mesa Verde or Golden State Annex facilities at any time between July 13, 2018 and the date of final judgment in this matter and (2) participated in GEO's Voluntary Work Program at any point during their detention at Mesa Verde or Golden State Annex.

DATED: May 18, 2023

Respectfully submitted,

ROSEN BIEN GALVAN & GRUNFELD LLP

By: */s/ Ben Hattem*
Ben Hattem

Attorneys for Plaintiffs