GAY CROSTHWAIT GRUNFELD – 121944
ERNEST GALVAN – 196065
MICHAEL FREEDMAN – 262850
BEN HATTEM – 335232
ROSEN BIEN GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California 94105-1738
Telephone: (415) 433-6830
Facsimile: (415) 433-7104
Email: ggrunfeld@rbgg.com
egalvan@rbgg.com
mfreedman@rbgg.com
bhattem@rbgg.com

PRIYA ARVIND PATEL – 295602
TREVOR KOSMO - 329218
CENTRO LEGAL DE LA RAZA
3400 East 12th Street
Oakland, California 94601-3402
Telephone: (510) 437-1554
Email: ppatel@centrolegal.org
tkosmo@centrolegal.org

LISA V. KNOX – 279406
CALIFORNIA COLLABORATIVE
FOR IMMIGRANT JUSTICE
1999 Harrison Street, Suite 1800
Oakland, California 94612-4700
Telephone: (510) 230-6746
Email: lisa@ccijustice.org

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION

| | |
|---|---|
| JOSE RUBEN HERNANDEZ GOMEZ; SALESH PRASAD; GUILLERMO MEDINA REYES; EDGAR SANCHEZ; ADAN CASTILLO MERINO; IVAN OLIVA SIERRA; FIDEL GARCIA; ISAAC CARDONA HERNANDEZ; and PEDRO JESUS FIGUEROA PADILLA, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE GEO GROUP, INC.; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 1:22-CV-00868-ADA-CDB<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY ADJUDICATION**<br><br>Date: June 22, 2023<br>Time: 1:30 p.m.<br>Crtrm.: 1, 8th Floor<br><br>Judge: Hon. Ana de Alba<br>Magistrate: Hon. Christopher D. Baker<br><br>Trial Date: None Set |

## TABLE OF CONTENTS

Page

NOTICE OF MOTION ..... 1
INTRODUCTION ..... 1
I. Legal Standard ..... 2
II. Plaintiffs Are Entitled To Minimum Wage Under California Law ..... 2
A. Employees in California Are Entitled To Be Paid California's Minimum Wage By Their Employers ..... 2
B. Plaintiffs Are GEO's Employees Under *Martinez v. Combs* ..... 3
1. GEO Controls Plaintiffs' Wages, Hours, and Working Conditions ..... 4
2. GEO Suffers and Permits Plaintiffs to Work in Its Facilities ..... 7
3. GEO Has a Common-Law Employment Relationship with Plaintiffs ..... 9
C. Plaintiffs Are Not Volunteers ..... 12
1. *Talley v. County of Fresno* Does Not Apply ..... 13
2. Plaintiffs Would Meet the *Talley* Standard If It Applied ..... 15
III. GEO's Underpayment of Detained Workers Violates the UCL ..... 16
CONCLUSION ..... 17

# TABLE OF AUTHORITIES

**Page**

**CASES**


*Arriaga v. County of Alameda*,
9 Cal. 4th 1055 (1995) .................... 16, 17

*Ayala v. Antelope Valley Newspapers, Inc.*,
59 Cal.4th 522 (2014) .................... 4, 10, 11

*Community for Creative Non-Violence v. Reid*,
490 U.S. 730 (1989) .................... 15

*Cortez v. Purolator Air Filtration Prods. Co.*,
23 Cal. 4th 163 (2000) .................... 17

*Duffey v. Tender Heart Home Care Agency, LLC*,
31 Cal. App. 5th 232 (2019) .................... 7

*Dynamex Operations W. v. Superior Court*,
4 Cal. 5th 903 (2018) .................... passim

*Futrell v. Payday Cal., Inc.*,
190 Cal. App. 4th 1419 (2010) .................... 5

*Malloy v. Fong*,
37 Cal. 2d 356 (1951) .................... 11

*Martinez v. Combs*,
49 Cal. 4th 35 (2010) .................... passim

*Mattei v. Corp. Mgmt. Sols., Inc.*,
52 Cal. App. 5th 116 (2020) .................... 3

*Menocal v. GEO Group, Inc.*,
--- F. Supp. 3d ----, 2022 WL 17038977 (D. Colo. Oct. 18, 2022) .................... 6

*Morillion v. Royal Packing Co.*,
22 Cal. 4th 575 (2000) .................... 9

*Novoa v. GEO Group, Inc.*,
No. EDCV 17-2514 JGB (SHKx), 2022 WL 2189626 (C.D. Cal. Jan. 25, 2022) .................... 6

*S. G. Borello & Sons, Inc. v. Dep't of Indus. Relations*,
48 Cal. 3d 341 (1989) .................... 4, 10, 12, 13

*Scafidi v. Las Vegas Metro. Police Dep't*,
966 F.3d 960, 962 (9th Cir. 2020) .................... 2

*Talley v. County of Fresno*,
51 Cal. App. 5th 1060 (2020) .................... passim

*Taylor v. Fin. Cas. & Sur., Inc.*,
67 Cal. App. 5th 966 (2021) .......... 4, 5

*Thomas v. Ponder*,
611 F.3d 1144 (9th Cir. 2010) .......... 2

*Toyota Motor Sales U.S.A., Inc. v. Superior Court*,
220 Cal. App. 3d 864 (1990) .......... 11

*United States v. Rosenwasser*,
323 U.S. 360 (1945) .......... 8

*Vazquez v. Jan-Pro Franchising Int'l, Inc.*,
10 Cal. 5th 944 (2021) .......... 9

*Woods v. Am. Film Inst.*,
72 Cal. App. 5th 1022 (2021) .......... 15

**STATUTES**

Cal. Bus & Prof. Code § 17203 .......... 16

Cal. Bus. & Prof. Code § 17200 .......... 16

Cal. Bus. & Prof. Code § 17204 .......... 16

Cal. Bus. & Prof. Code § 17208 .......... 16

Cal. Code Civ. Proc. § 338 .......... 16

Cal. Code Regs. tit. 8, §§ 11050 .......... 3

Cal. Gov't Code §§ 12900-12996 .......... 12

Cal. Lab. Code § 1182.12 .......... 2

Cal. Lab. Code § 1194 .......... 3

Cal. Lab. Code § 1197.1 .......... 3

Cal. Lab. Code § 1720.4 .......... 14

**OTHER AUTHORITIES**

U.S. Immigr. & Customs Enf't,
*Performance-Based National Detention Standards* § 5.8(V)(K) (2016) .......... 4

**RULES**

Fed. R. Civ. P. 30(b) ........................................................................................ 5
Fed. R. Civ. P. 56(a) ........................................................................................ 2
Fed. R. Evid. 801 ........................................................................................ 6

## NOTICE OF MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on June 22, 2023, at 1:30 p.m., or as soon thereafter as the matter may be heard, in Courtroom 1 of the Fresno courthouse for the Eastern District of California, Plaintiffs will and hereby do move the Court for an order granting summary judgment to Plaintiffs on their minimum wage and Unfair Competition Law claims.

This motion is based on the accompanying Memorandum of Points and Authorities, the Statement of Undisputed Facts required by L.R. 260(a), the Declarations in Support of Plaintiffs' Motion for Summary Adjudication and Motion for Partial Class Certification filed concurrently herewith, the documents attached thereto, and the entire record in this matter.

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Plaintiffs work in The GEO Group, Inc.'s facilities and are not paid minimum wage. The GEO Group, Inc. ("GEO") determines what work Plaintiffs must do and how they must do it, assigning their jobs, setting their schedules, and providing the materials they must use. GEO decides how much money Plaintiffs receive for their labor. And Plaintiffs' work for GEO is labor performed for a for-profit entity in exchange for compensation.

None of these facts are disputable. GEO has admitted what it pays Plaintiffs for their work; the Performance-Based National Detention Standards and the testimony of GEO's designated witnesses in the *Menocal* and *Novoa* litigation make clear that GEO sets Plaintiffs' wages; GEO's Detainee Handbooks and Plaintiffs' work documents and declarations demonstrate that GEO controls Plaintiffs' job assignments, hours, and working conditions; and publicly available financial records show that GEO is not a nonprofit entity that could rely on volunteer labor under the California Labor Code.

These facts are sufficient to establish that GEO is Plaintiffs' employer for purposes

of the California Labor Code and Plaintiffs' minimum wage claim. No discovery is needed on this issue—Plaintiffs' minimum wage claim succeeds because of basic and uncontested aspects of GEO's detainee work program. Moreover, because GEO's decision to pay detained workers subminimum wages violates California's minimum wage law, it also violates California's Unfair Competition Law ("UCL"), which prohibits all unlawful business practices, including paying employees less than minimum wage. Plaintiffs should be granted summary adjudication on their minimum wage and UCL claims.

## I. Legal Standard

"A party may move for summary judgment, identifying each claim . . . on which summary judgment is sought." Fed. R. Civ. P. 56(a). Summary judgment should be granted when, "viewing the evidence in the light most favorable to the nonmoving party, there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Scafidi v. Las Vegas Metro. Police Dep't*, 966 F.3d 960, 962 (9th Cir. 2020). A dispute of material fact is genuine "if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party." *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010) (quoting *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006)).

## II. Plaintiffs Are Entitled To Minimum Wage Under California Law

### A. Employees in California Are Entitled To Be Paid California's Minimum Wage By Their Employers

Section 1182.12(b)(1) of the California Labor Code establishes a minimum wage for "any employer who employs 26 or more employees," which has risen annually from $10.50 per hour in 2017 to $15 per hour in 2022. Cal. Lab. Code § 1182.12(b)(1). This wage "is the minimum wage to be paid to employees, and the payment of a lower wage than the minimum so fixed is unlawful." *Id.* § 1197. Because GEO employs more than 26 employees, it is required to pay its California employees the minimum wage prescribed by section 1182.12(b)(1). *See* GEO 3Q22 Investor Presentation at 4, https://www.sec.gov/Archives/edgar/data/923796/000119312522293851/d424193dex991.htm (last visited

May 17, 2023). Employers who pay their California employees less than minimum wage are subject to suit for civil penalties, restitution of wages, and other damages and penalties. *See* Cal. Lab. Code §§ 1194, 1197.1(a).

### B. Plaintiffs Are GEO's Employees Under *Martinez v. Combs*

In suits brought for violations of the California Labor Code, the wage orders of California's Industrial Welfare Commission ("IWC") "define the employment relationship." *Martinez v. Combs*, 49 Cal. 4th 35, 52 (2010); *see also Mattei v. Corp. Mgmt. Sols., Inc.*, 52 Cal. App. 5th 116, 122-23 (2020) ("To impose liability for violations of the Labor Code," plaintiffs must show the defendant is their employer under the applicable IWC wage order.). These wage orders—including Wage Orders 5 and 15, under which Plaintiffs' minimum wage claim is brought—provide that an "employer" is anyone who "employs or exercises control over the wages, hours, or working conditions of any person" and that to "employ" means "to engage, suffer, or permit to work." Cal. Code Regs. tit. 8, §§ 11050(2)(H), 11150(2)(E); *see also Martinez*, 49 Cal. 4th at 59. The California Supreme Court interpreted this language in *Martinez v. Combs*, holding that under the wage orders, "[t]o employ . . . has three alternative definitions. It means: (a) to exercise control over the wages, hours or working conditions, *or* (b) to suffer or permit to work, *or* (c) to engage, thereby creating a common law employment relationship." *Martinez*, 49 Cal. 4th at 64.

The three-part standard of *Martinez* "control[s] in cases involving whether an employer-employee relationship exists for purposes of the Labor Code wage statutes." *Taylor v. Fin. Cas. & Sur., Inc.*, 67 Cal. App. 5th 966, 1000 (2021). And with regard to claims like Plaintiffs' in particular, the California Supreme Court has been absolutely clear: "[T]he wage order definitions of the employment relationship apply in civil actions for unpaid minimum or overtime wages . . . ." *Dynamex Operations W. v. Superior Court*, 4 Cal. 5th 903, 940 (2018).

Plaintiffs are GEO's employees under each of the three alternative definitions given by *Martinez* and the IWC wage orders. GEO determines what pay Plaintiffs receive for

their work, prescribes their work schedules, and sets their working conditions. GEO suffers and permits Plaintiffs to work because it knows that Plaintiffs are working in its facilities on its behalf while being paid less than minimum wage, and because it cannot meet any of the requirements set forth in *Dynamex* for an entity to avoid the conclusion that people who work for it are its employees. *See id.* at 957. Finally, GEO engages Plaintiffs as employees under the common law standard: It retains "the right to control the manner and means of accomplishing the result [it] desire[s]," and it is empowered to fire them at will, which is "the strongest evidence of the right to control." *Ayala v. Antelope Valley Newspapers, Inc.*, 59 Cal. 4th 522, 531 (2014) (quoting *S. G. Borello & Sons, Inc. v. Dep't of Indus. Relations*, 48 Cal. 3d 341, 350 (1989)). Meeting any one of these standards would be sufficient to establish that GEO is Plaintiffs' employer under the California Labor Code. All three are met here.

**1. GEO Controls Plaintiffs' Wages, Hours, and Working Conditions**

The section of the wage orders' definition of employment addressing "wages, hours, *or* working conditions" is "phrased . . . in the alternative." *Martinez*, 49 Cal. 4th at 59. "The alternative phrasing means that control over either wages, hours, or working conditions will create an employment relationship." *Taylor*, 67 Cal. App. 5th at 984; *see also Martinez*, 49 Cal. 4th at 59. There is no genuine dispute that GEO controls Plaintiffs' wages, hours, and working conditions.

California's courts have held that "'control over wages' means that a person or entity has the power or authority to negotiate and set an employee's rate of pay." *Futrell v. Payday Cal., Inc.*, 190 Cal. App. 4th 1419, 1432 (2010). GEO has that power. ICE's Performance-Based National Detention Standards state that detained immigrants who work in a facility's voluntary work program ("VWP") must be paid "at least $1.00 (USD) per day." U.S. Immigr. & Customs Enf't, *Performance-Based National Detention Standards* § 5.8(V)(K) (2016), https://www.ice.gov/doclib/detention-standards/2011/pbnds2011r2016.pdf ("PBNDS"). The PBNDS do not require GEO to pay detained workers *exactly* $1 per day; any amount over $1 per day would meet GEO's

obligations under the PBNDS. As the ICE National Detainee Handbook explains, VWP participants should be paid "*at least* $1 for each day [they] work." *See* Decl. of Susan Coleman in Supp. Defs.' Mot. to Dismiss Second Am. Compl. ("Coleman Decl."), Ex. C (ICE National Detainee Handbook) at 20, ECF No. 47-2 (Jan. 6, 2023) (emphasis added). And GEO has conceded that it has discretion to pay detained workers more than $1 per day. *See* Opp'n to Mot. for Leave to File Sur-Reply at 4-5, ECF No. 54 (Feb. 13, 2023).

Testimony by Daniel Ragsdale, GEO's Executive Vice President for Contract Compliance, confirms that GEO has this discretion. Ragsdale was deposed as GEO's corporate designee under Federal Rule of Civil Procedure 30(b)(6) in *Menocal v. GEO Group, Inc.*, a suit brought by detained workers at GEO's Aurora Detention Facility in Colorado that raises claims similar to this litigation. *See Menocal v. GEO Group, Inc.*, --- F. Supp. 3d ----, 2022 WL 17038977, at *2 (D. Colo. Oct. 18, 2022). Ragsdale testified that "GEO can pay more than a dollar a day and has." Decl. of Ben Hattem in Supp. Pls.' Mot. for Partial Class Certification & Pls.' Mot. for Summ. Adjudication ("Hattem Decl."), Ex. N at 24 (Dep. of Daniel Ragsdale, Feb. 27, 2020).

Amber Martin, GEO's Executive Vice President of Contract Administration, was deposed as GEO's Rule 30(b)(6) witness in *Novoa v. GEO Group, Inc.*, a suit brought by detained workers at GEO's Adelanto Detention Center in California. *See Novoa v. GEO Group, Inc.*, No. EDCV 17-2514 JGB (SHKx), 2022 WL 2189626, at *12 (C.D. Cal. Jan. 25, 2022). Like Ragsdale, Martin testified that GEO was "not prohibited" from paying detained workers more than $1 per day, but would only be reimbursed by ICE for $1 per day. Hattem Decl, Ex. O at 17 (Dep. of Amber Martin, Aug. 11, 2020). She also testified that GEO in fact pays more than $1 per day "out of our pocket" at facilities that have "additional budget to be able to do so." *Id.* at 18. In the *Menocal* litigation, Martin similarly testified that GEO could pay detained workers more than $1 per day, but that GEO would have to "do it on our own dime" because it would not be reimbursed by ICE for more than $1 per day. *Menocal*, 2022 WL 17038977, at *4; *see also* Hattem Decl., Ex. P at 26 (Dep. of Amber Martin, Oct. 9, 2019). Martin has "responsibility over all

contracts" for GEO. *See* Hattem Decl., Ex. P at 28. Martin's and Ragsdale's statements are admissible against GEO because they are statements "made by a person whom the party authorized to make a statement on the subject." Fed. R. Evid. 801(d)(2)(C).

Exercising its discretion to set the wages of detained workers, GEO decided to pay Plaintiffs $1 per day for their labor in its work program. GEO's control over Plaintiffs' wages is sufficient, even without more, to make GEO Plaintiffs' employer for purposes of the California Labor Code. *See Duffey v. Tender Heart Home Care Agency, LLC*, 31 Cal. App. 5th 232, 254 (2019) ("[C]ontrol over any one of" wages, hours, or working conditions "creates an employment relationship.").

GEO also controls Plaintiffs' work hours. Plaintiffs are not permitted to set their own hours; the Detainee Handbooks for both Mesa Verde and Golden State Annex make clear that detained immigrants who join the facilities' work programs must work "on the days and hours scheduled for their assignment." Hattem Decl, Ex. C at 22 (Golden State Annex Handbook); *id.*, Ex. B at 21 (Mesa Verde Handbook); *see also, e.g.*, Decl. of Edgar Sanchez at 3-4 (explaining that GEO staff assigned Plaintiff Sanchez to work specific days and shifts); Decl. of Mohamed Mousa at 4 (describing GEO staff's threats to discipline or fire Mr. Mousa for asking not to work on Saturdays for religious reasons).[1]

Finally, GEO controls Plaintiffs' working conditions. It requires detained immigrants who apply to participate in its work programs to pass a screening process, complete trainings, and follow a dress code. Hattem Decl., Ex. C at 22-23; *id.*, Ex. B at 21; *see also, e.g.*, *id.*, Ex. G at 3 (showing required training for detained worker's job); *id.*, Ex. F at 3, 6-8 (same); *id.*, Ex. E at 3 (same). It determines how detained immigrants are paid for their work, electing to pay them by crediting their accounts with $1 each day they work. *Id.*, Ex. C at 23; *id.*, Ex. B at 21; *see also* Coleman Decl., Ex. C at 20, ECF No. 47-2 (Jan. 6, 2023) (ICE National Detainee Handbook noting that different facilities choose

---

[1] Plaintiffs' declarations cited herein are attached to Plaintiffs' concurrently filed Index to Class Member Declarations.

different ways of paying detained workers). It provides protective equipment and other materials that detained workers use to do their jobs at GEO's facilities. *See, e.g.*, Hattem Decl., Ex. G at 5 (safety glasses and training form); *id.*, Ex. E at 4 (same); *see also, e.g.*, Decl. of Pedro Figueroa Padilla at 4. It reviews detained workers' job performance. *See* Hattem Decl., Ex. E at 6 (six-month performance review); *see also, e.g.*, Decl. of Fidel Garcia at 5. It prescribes detained workers' job duties in minute detail; for instance, when Plaintiff Jose Hernandez Gomez was hired by GEO, a GEO floor officer instructed him that his tasks "would include scrubbing and mopping showers and common areas of the dorm, cleaning and removing soap scum from shower walls and bathroom fixtures, cleaning toilets, emptying trash, disinfecting appliances such as phone booths and microwaves, and sweeping and mopping the hallways throughout the dorm." Decl. of Jose Hernandez Gomez at 4. Other workers received similarly detailed instructions. *See, e.g.*, Decl. of Edgar Alvarez Rodriguez at 3. Again, because control of "wages, hours, *or* working conditions" is sufficient, GEO's control of Plaintiffs' work hours and working conditions each independently makes it Plaintiffs' employer for purposes of the California Labor Code. *Martinez*, 49 Cal. 4th at 59.

**2. GEO Suffers and Permits Plaintiffs to Work in Its Facilities**

As the California Supreme Court has explained, the "suffer or permit" standard is "'the broadest definition' that has been devised for extending the coverage of a statute or regulation to the widest class of workers that reasonably fall within the reach of a social welfare statute." *Dynamex*, 4 Cal. 5th at 951 (quoting *United States v. Rosenwasser*, 323 U.S. 360, 363 n.3 (1945)). It is intended to "reach[] irregular working arrangements the proprietor of a business might otherwise disavow." *Martinez*, 49 Cal. 4th at 58. The standard therefore requires only that the "putative employer 'knows or should have known' that work is being performed on its behalf." *Vazquez v. Jan-Pro Franchising Int'l, Inc.*, 10 Cal. 5th 944, 956 (2021) (quoting *Morillion v. Royal Packing Co.*, 22 Cal. 4th 575, 585 (2000)). It applies whenever an entity "knows that persons are working in his or her business without having been formally hired, or while being paid less than the minimum

wage." *Martinez*, 49 Cal. 4th at 69.

The California Supreme Court recently elaborated on the "suffer or permit" standard, holding that workers are employees under the wage orders' suffer or permit standard unless "the hiring entity establishes (A) that the worker is free from the control and direction of the hiring entity in connection with the performance of the work, both under the contract for the performance of the work and in fact, (B) that the worker performs work that is outside the usual course of the hiring entity's business, and (C) that the worker is customarily engaged in an independently established trade, occupation, or business." *Dynamex*, 4 Cal. 5th at 964. The burden of proof lies with the hiring entity to establish all three requirements. *Id.* at 957. If the hiring entity "fail[s] to prove any one of these three prerequisites," the worker is an employee for purposes of the IWC wage orders and the California Labor Code. *Id.* at 964.

The undisputed facts demonstrate that GEO suffers and permits Plaintiffs to work for GEO in its facilities for less than minimum wage. Plaintiffs' approved applications to participate in GEO's work program show that GEO was aware of their participation and that GEO paid them $1 per day for their work. *See* Hattem Decl., Ex. G at 2; *id.*, Ex. H at 1; *id.*, Ex. F at 5; *id.*, Ex. E at 1, 5; *id.*, Ex. D at 1. Moreover, GEO acknowledges that it pays Plaintiffs—and all other detained workers at the Mesa Verde and Golden State Annex facilities—$1 per day for their labor. *See* Mot. to Dismiss at 16, ECF No. 47 (Jan. 6, 2023) (arguing that "GEO's payment of $1 per day to detainees was authorized" (capitalization adjusted)). GEO's records of the payments made to Plaintiffs confirm this as well. *See* Hattem Decl., Ex. K at 1-32; *id.*, Ex. J at 2-34; *id.*, Ex. I at 1-17; *id.*, Ex. L at 6-21. Standing alone, this demonstrates that GEO knows that Plaintiffs and other detained workers "are working in [its] business . . . while being paid less than the minimum wage." *Martinez*, 49 Cal. 4th at 69. And the Court need go no further: This by itself is enough to make GEO Plaintiffs' employer under the California Labor Code.

Furthermore, the evidence indisputably shows that GEO cannot establish any one of the three requirements of the *Dynamex* test. With regard to the first requirement, as

discussed both above and below, every aspect of Plaintiffs' work is subject to GEO's control. As to the second requirement, Plaintiffs' declarations and the descriptions of detained workers' work assignments in GEO's facility handbooks make clear that Plaintiffs perform work that is essential to GEO's operations and that would have to be performed by GEO staff if GEO did not hire detained workers to do it. *See, e.g.*, Decl. of Salesh Prasad at 5; Hattem Decl., Ex. B at 21; *id.*, Ex. C at 22. Finally, a putative employer meets the third requirement of *Dynamex* when the worker "*independently* has made the decision to go into business for himself or herself" and performs work under the auspices of that independent business. *Dynamex*, 4 Cal. 5th at 962 (emphasis in original). Detained immigrants who have no job options but the work GEO assigns to them have not "independently decided to engage in an independently established business." *Id.*; *see also, e.g.*, Decl. of Guillermo Medina Reyes at 7. GEO would need to prove all three of the *Dynamex* factors to establish that Plaintiffs are not GEO's employees; because GEO cannot establish a genuine factual dispute about any of the factors, summary judgment should be granted to Plaintiffs.

**3. GEO Has a Common-Law Employment Relationship with Plaintiffs**

Finally, GEO's control of Plaintiffs' work establishes a common-law employment relationship with Plaintiffs. "Under the common law, '[t]he principal test of an employment relationship is whether the person to whom service is rendered has the right to control the manner and means of accomplishing the result desired.'" *Ayala*, 59 Cal. 4th at 531 (alteration in original) (quoting *Borello*, 48 Cal. 3d at 350). Whether the putative employer retains this right to control "may be measured by asking 'whether or not, if instructions were given, they would have to be obeyed' on pain of at-will 'discharge[] for disobedience.'" *Id.* at 533 (alteration in original) (quoting *Toyota Motor Sales U.S.A., Inc. v. Superior Court*, 220 Cal. App. 3d 864, 875 (1990)). Accordingly, "[p]erhaps the strongest evidence of the right to control is whether the hirer can discharge the worker without cause, because '[t]he power of the principal to terminate the services of the agent

gives him the means of controlling the agent's activities.'" *Id.* at 531 (second alteration in original) (quoting *Malloy v. Fong*, 37 Cal. 2d 356, 370 (1951)).

The ICE National Detainee Handbook makes clear that GEO retains this control over detained workers' labor. The handbook informs detained workers that they can be "fired" if they "do not do [their] work satisfactorily." Coleman Decl., Ex. C at 20, ECF No. 47-2 (Jan. 6, 2023). GEO has admitted that it uses this handbook. *See* Mot. to Dismiss at 17, ECF No. 47 (Jan. 6, 2023). In addition, the agreements that Plaintiffs were required to sign to start their jobs in GEO's facilities indicated that "work detail members serve at the pleasure of the facility and may be removed from their work status without prior notice of justification." Hattem Decl., Ex. G at 1-2; *see also id.*, Ex. E at 1, 5; *id.*, Ex. H at 1; *id.*, Ex. F at 5. GEO routinely fires detained workers for disobeying instructions or for reasons unrelated to the workers' job performance. *See, e.g.*, Decl. of Isaac Cardona Hernandez at 3 (reporting that 13 porters were fired during a transfer of detained people from one dorm to another); Decl. of Edgar Alvarez Rodriguez at 3 (describing how GEO hired and fired detained workers at will when COVID-19 infections interrupted their work). Plaintiffs understood that they could be fired at GEO's discretion for any reason or no reason at all. *See, e.g.*, Decl. of Fidel Garcia at 4; Decl. of Guillermo Medina Reyes at 5.

In addition to the right to control—which is the "foremost consideration in assessing whether a common law employer-employee relationship exists"—there exists "a range of secondary indicia drawn from the Second and Third Restatements of Agency that may in a given case evince an employment relationship" even if the putative employer does not retain the right to control the worker's labor. *Ayala*, 59 Cal. 4th at 532. They are:

> (a) whether the one performing services is engaged in a distinct occupation or business; (b) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the principal or by a specialist without supervision; (c) the skill required in the particular occupation; (d) whether the principal or the worker supplies the

> instrumentalities, tools, and the place of work for the person doing the work; (e) the length of time for which the services are to be performed; (f) the method of payment, whether by the time or by the job; (g) whether or not the work is a part of the regular business of the principal; and (h) whether or not the parties believe they are creating the relationship of employer-employee.

*Id.* (quoting *Borello*, 48 Cal. 3d at 351).

Nearly all of these secondary factors point toward the existence of an employer-employee relationship. As to factor (a), GEO's own handbooks explain that detained workers perform jobs "such as Food Service Worker, Dining Hall Worker, Laundry Worker, Sanitation Worker, Dorm Porter, and Haircutter[,] and General Services Worker." Hattem Decl., Ex. C at 22; *see also id.*, Ex. B at 21 (similar). The workers "engage in no distinct trade or calling" and "do not hold themselves out in business." *Borello*, 48 Cal. 3d at 357. With regard to factors (b) and (c), labor such as laundry, sanitation, and dining hall services are not skilled professions typically undertaken by specialists. *See, e.g.*, Decl. of Mohamed Mousa at 4. Plaintiffs and other detained workers have confirmed that the work they perform is largely unskilled labor. *See, e.g.*, *id.*; *see also* Restatement (Second) of Agency § 220 cmt. h (1958) ("work which does not require the services of one highly educated or skilled" indicates existence of employment relationship). And GEO's Rule 30(b)(6) designee in the *Menocal* litigation testified that detained immigrants who work in GEO's facilities are not permitted to do jobs that are "particularly specialized." Hattem Decl., Ex. N at 20.

As to factor (d), Plaintiffs have confirmed that GEO provided the tools they used and prescribed where they worked. *See, e.g.*, Decl. of Francisco Alfaro Ramirez at 3-4. Forms that Plaintiffs were required to sign when they received tools and safety gear from GEO also reflect that GEO provided the materials they used to do their jobs in GEO's facilities. *See* Hattem Decl., Ex. H at 4; *id.*, Ex. E at 4; *id.*, Ex. D at 4. For factor (f), GEO's handbooks explain that detained workers are paid by the day, not by the job. *Id.*,

Ex. B at 21; *id.*, Ex. C at 23; *see also* Coleman Decl., Ex. C at 20, ECF No. 47-2 (Jan. 6, 2023) (ICE National Detainee Handbook explaining to detained workers that "you will get at least $1 for each day you work, not for each assignment."). And for factor (g), Plaintiffs have confirmed that their labor is necessary to maintain GEO's facilities in habitable condition. *See, e.g.*, Decl. of Edgar Sanchez at 4.

With regard to factor (h), GEO plainly does not believe that it created an employer-employee relationship with Plaintiffs. But "[t]he label placed by the parties on their relationship is not dispositive," and neither is GEO's unilateral claim that it did not intend to make Plaintiffs its employees when it hired and paid them to perform labor on its behalf. *See Borello*, 48 Cal. 3d at 349. Because GEO controlled the manner and means by which Plaintiffs accomplished their work, and because the secondary factors of the common-law standard overwhelmingly indicate that GEO is Plaintiffs' employer, there can be no genuine dispute that GEO has established a common-law employment relationship with Plaintiffs, just as it has employed them by prescribing their wages, hours, and working conditions, and by suffering and permitting them to work in its facilities.

**C. Plaintiffs Are Not Volunteers**

GEO has argued that Plaintiffs are volunteers who donate their labor to improving GEO's facilities rather than employees who work for GEO in exchange for money. *See* Mot. to Dismiss at 24-25, ECF No. 47 (Jan. 6, 2023). GEO has claimed it is not required to pay Plaintiffs minimum wage for this reason. *See id.* In support of its view that its detained workers are volunteers, GEO has cited *Talley v. County of Fresno*, 51 Cal. App. 5th 1060 (2020), which held that people who perform "*unpaid* work" must receive non-wage benefits that are "financially significant and quantifiable" in order to be entitled to the protections of California's Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code §§ 12900-12996. *Talley*, 51 Cal. App. 5th at 1080, 1086 (emphasis in original). *Talley* does not apply to Plaintiffs' claims, which involve paid work and arise under a different law that uses different definitions of both employees and volunteers. Moreover, even if *Talley* applied, there is no genuine dispute that Plaintiffs would meet the standard it sets.

### 1. *Talley v. County of Fresno* Does Not Apply

*Talley* does not apply to Plaintiffs' minimum wage claim for two reasons. First, *Talley* interpreted the FEHA, a statute that bears a narrower definition of employment and a concomitantly broader exemption for volunteers than the California Labor Code provisions on which Plaintiffs' claim is based. And second, *Talley* described a rule that applies only "where the association or work performed does not involve a salary or wage." *Id.* at 1080; *see also id.* at 1071 (explaining that the issue before the court was "whether an uncompensated worker may be deemed an employee within the meaning of the FEHA"). By its own terms, *Talley* is inapplicable to Plaintiffs, who are paid a wage of $1 per day for the work they perform for GEO.

To begin, *Talley* is about the FEHA, a statute under which the existence of an employer-employee relationship is determined solely by the common law test. *Id.* at 1079 (noting that the common law standard governs the FEHA). As discussed above, the common law standard is just one of three alternative tests by which an individual may be classified as an employee under the California Labor Code, and it is narrower than the suffer or permit standard. *See Dynamex*, 4 Cal. 5th at 958 ("[T]he suffer or permit to work definition was intended to be broader and more inclusive than the common law test . . . ."). To that end, *Talley*'s analysis flows principally from "federal court interpretation of . . . federal antidiscrimination statutes," which it explains are "[o]ne of the primary methodological tools for interpreting the FEHA." *Talley*, 51 Cal. App. 5th at 1072. By contrast, both the California Labor Code and the federal Fair Labor Standards Act (FLSA) "contain[] a broader standard of employment than that generally applicable in other, non-wage-and-hour federal contexts." *Dynamex*, 4 Cal. 5th at 948. And the standard under the California Labor Code and IWC wage orders is broader even than that of the FLSA. *See id.* at 956 ("[T]he California wage orders are intended to provide broader protection than that accorded workers under the federal standard."); *Martinez*, 49 Cal. 4th at 59-60 (definition of "employer" in IWC wage orders was "intended to distinguish state wage law from its federal analogue, the FLSA" and "provide employees with greater protection than

federal law affords").

In line with the Labor Code's broader standard for qualification as an employee, the Code exempts narrower categories of volunteers than the FEHA does. In particular, the Labor Code's wage and hour provisions exclude people who "volunteer their time to nonprofit entities," so long as they "expect[] no compensation" and do not "work for compensation." *Woods v. Am. Film Inst.*, 72 Cal. App. 5th 1022, 1026, 1038 (2021). Similarly, people who work on public works projects for a nonprofit "public agency or corporation" and who do so "without promise, expectation, or receipt of any compensation for work performed" are exempt from California's prevailing wage law. Cal. Lab. Code § 1720.4(a).

GEO is not a nonprofit. *See* GEO 3Q22 10-Q at 7, https://www.sec.gov/Archives/edgar/data/923796/000095017022023329/geo-20220930.htm (last visited May 17, 2023) (indicating that GEO is a C Corporation). No volunteer exception to the Labor Code's wage and hour provisions exists for detained workers who perform labor for a for-profit company for compensation, as Plaintiffs do. For that reason, *Talley*'s conclusion that the FEHA excludes all individuals who do not work for a wage or for other "financially significant and quantifiable . . . remuneration" is irrelevant to Plaintiffs' minimum wage claim. *See Talley*, 51 Cal. App. 5th at 1086.

In addition, *Talley* makes clear that its discussion of the "threshold-remuneration" test is relevant only when the "work performed does not involve a salary or wage." *Id.* at 1080. As the *Talley* court explained, in the "context of paid work activities," courts evaluating claims under the FEHA look directly to the common law factors articulated in *Community for Creative Non-Violence v. Reid*, 490 U.S. 730 (1989) to determine whether "*compensated* workers ha[ve] an employment relationship with their purported employers." *Talley*, 51 Cal. App. 5th at 1072-74 (emphasis in original). Only in the "unpaid work/association context" do courts consider as a threshold question whether the plaintiffs received "significant *indirect* financial benefits" from their putative employers. *Id.* at 1074-76 (capitalization adjusted) (emphasis in original).

There is no genuine dispute that Plaintiffs worked for GEO for compensation. It is uncontested that GEO paid Plaintiffs $1 per day for the labor they performed in GEO's work program. *See* Mot. to Dismiss at 16; *see also, e.g.*, Hattem Decl., Ex. H at 1 ("The maximum compensation will be $1.00 per day."). Plaintiffs sought work in GEO's work programs so they could receive the wage GEO offered its detained workers. *See, e.g.*, Decl. of Sergio Marez Gallegos at 6. Because Plaintiffs' "work was performed for a wage or salary," *Talley* would present no obstacle to Plaintiffs' claim even if the claim arose under the FEHA. *Talley*, 51 Cal. App. 5th at 1080.

### 2. Plaintiffs Would Meet the *Talley* Standard If It Applied

The threshold-remuneration test discussed in *Talley* does not apply to Plaintiffs' minimum wage claims, and this Court need not consider it. Even if that test did apply, however, there can be no genuine dispute that Plaintiffs would meet it.

As *Talley* explained, in cases where "work was performed for a wage or salary, the threshold-remuneration test is satisfied." *Talley*, 51 Cal. App. 5th at 1080. Whether the Court were to consider the wages Plaintiffs receive as making *Talley* inapposite or as satisfying the *Talley* test, the result would be the same: The threshold-remuneration standard does not bar Plaintiffs' claim.

Nor would the result change if the Court proceeded through the remainder of *Talley*'s analysis. *Talley*'s threshold-remuneration test requires that a worker receive remuneration that is "of a quantifiable, financial nature that is significant and not merely incidental to the work activities performed" to be deemed an employee for purposes of the FEHA. *Id.* at 1084. Under that test, even non-monetary compensation is sufficient as long as "[i]t is at least possible to translate" the benefit received "into quantifiable, financial terms." *Id.* at 1086. For example, in *Arriaga v. County of Alameda*, 9 Cal. 4th 1055 (1995), a California Labor Code case that pre-dated the current standard for an employment relationship under that Code announced in *Martinez*, the California Supreme Court held that a person who "received credit against [a] court-imposed fine" got sufficient remuneration to qualify as an employee, explaining that if she had "received money with

which to pay her fine, she unquestionably would have received sufficient remuneration." *Id.* at 1065 & n.7. *Talley* cited *Arriaga* for the substance of its threshold-remuneration test. *Talley*, 51 Cal. App. 5th at 1085.

As discussed above, there is no genuine dispute that GEO paid Plaintiffs $1 per day for the labor they performed in GEO's work program. Plaintiffs "received money" from GEO, *Arriaga*, 9 Cal. 4th at 1065 n.7, and their compensation was "not merely incidental to the work activities performed," *Talley*, 51 Cal. App. 5th at 1084. For those reasons, they "unquestionably would have received sufficient remuneration" under the *Talley* standard even if that standard applied here. *Arriaga*, 9 Cal. 4th at 1065 n.7.

## III. GEO's Underpayment of Detained Workers Violates the UCL

California's UCL prohibits "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. It entitles people injured by these practices both to "recover money or property obtained from the plaintiff . . . through unfair or unlawful business practices," *Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal. 4th 163, 173 (2000), and to injunctions to prevent future unfair or unlawful acts, Cal. Bus & Prof. Code § 17203. *See also* Cal. Bus. & Prof. Code § 17204 (providing private right of action). These remedies "are cumulative to each other and to the remedies or penalties available" under all other California laws. *Id.* § 17205.

A business practice that violates the California Labor Code is necessarily an "unlawful . . . business act or practice" for purposes of the UCL. *Cortez*, 23 Cal. 4th at 178 ("[A]ny business act or practice that violates the Labor Code through failure to pay wages is, by definition, an unfair business practice." (citation omitted)). While violations of the Labor Code are subject to a three-year statute of limitations, *see* Cal. Code Civ. Proc. § 338(a), claims under the UCL may be brought within four years, Cal. Bus. & Prof. Code § 17208; *see also Cortez*, 23 Cal. 4th at 178-79. Because GEO's policy of underpaying detained workers violated California's minimum wage law as explained above, Plaintiffs are entitled to summary adjudication on their UCL claim, to recovery of the wages GEO should have paid them since July 13, 2018, and to an injunction

prohibiting GEO from continuing to pay detained workers at Mesa Verde and Golden State Annex $1 per day.

## CONCLUSION

For the foregoing reasons, summary adjudication should be granted to Plaintiffs on their minimum wage and UCL claims.

DATED: May 18, 2023

Respectfully submitted,

ROSEN BIEN GALVAN & GRUNFELD LLP

By: */s/ Ben Hattem*
Ben Hattem

Attorneys for Plaintiffs